Burkhardt *v.* Burkhardt.

---

## JOSEPH BURKHARDT

*v.*

## EMELIE BURKHARDT.

[Submitted June 7th, 1902.   Decided June 10th, 1902.
Filed October 11th, 1902.]

1. Where defendant's husband was absent and unheard of for more than seven years, marriage by defendant with complainant, after that time, was valid under *Gen. Stat. p. 1187*, creating a presumption of death from such absence.

2. Under *Gen. Stat. p. 1187*, creating a presumption of death from seven years' absence, the time of death is ordinarily presumed to be at the expiration of the seven years.

---

Burkhardt *v.* Burkhardt.

---

On bill, answer and proofs in open court.

*Mr. Alexander Simpson,* for the complainant.

*Mr. Robert S. Hudspeth,* for the defendant.

PITNEY, V. C.

The object of the bill is to procure from the court a declaration of nullity of a ceremony of marriage which took place between the complainant and defendant on the 26th of February, 1898. The allegation is that, at the time of such ceremony, the defendant was the· wife of a living husband, one Frederick Hoeger. The answer admits the marriage to the· complainant, but denies that, at the time thereof, the defendant was the wife of Hoeger.

The parties went to trial on this issue; and I might dispose of the cause by simply saying that the complainant entirely failed to prove any marriage, either ceremonial or purely contractual, between the defendant and Hoeger.

But the history of the defendant was gone into for a period· of over fifteen years, and another issue was raised, discussed and submitted to the court, which was not involved in the pleadings.. It is, shortly, this: The complainant failing to show the mar-· riage relation between the defendant and Hoeger to exist, did show that, at one time, such relation existed between the defendant and one Hoffman; and the question was whether Hoffman was alive when the marriage ceremony took place between· the parties hereto.

· The defendant has had a varied experience for at least fifteen· years. She testified that she was born in April, 1870. In this I think she is mistaken, for it appears that in November, 1884, she· was married to one Wills, of Union township, Hudson county, and lived with him, in that neighborhood, for upwards of a year,. when she separated from him and went to live with her mother,. temporarily at least, in New York City. In December, 1886,. Wills commenced suit against her, in this court, for divorce on.. the ground of adultery, which was undefended, and on the 12th.·

Burkhardt *v.* Burkhardt.

of March, 1887, a decree of divorce was signed against her. About the year 1889 she married one Joseph Hoffman, and lived with him for about a year, in the same county. He was a manufacturer of iron fences, balcony railings and the like in New York City. In 1890 he had the misfortune to run over, with his wagon, and kill a boy. For this he was arrested and set at large on bail, and then ran away. His only relatives at the time were a sister, living in Brooklyn, and a nephew by marriage, living in New York City. A few days later his sister received a letter from him dated at Chicago. She answered that letter, but received no reply, and from that time to the time of the trial of this suit not a breath.has ever been heard from him. The sister and nephew were both sworn and testified to that effect, and that they had made earnest inquiries about him, without results. To the same effect is the evidence of the defendant. She swears that she inquired about him from everybody that she supposed would know, and received no tidings whatever of him.

After Hoffman left her she lived with her mother in Hoboken, and worked as a midwife. Her mother kept boarders, and among them was the man Hoeger. Hoeger cohabited with the defendant in her mother's house, with the result that a child was born to her in January, 1893, and she gave her name as Hoeger to the midwife who attended her, and that name was inserted in the birth certificate. She swears that, at that time, she was engaged to and intended to marry Hoeger, but afterwards changed her mind and refused. Hoeger swears that they were engaged to be married; but they both swear that they never were married, either by a minister, a magistrate or by mutual verbal promise to take one another as husband and wife at the present time. Hoeger swears that he was willing to marry her, but that she refused him; and a year or two after the birth of the child he married another woman, and has lived with her from that time on as his wife.

The complainant was thoroughly familiar with the circumstances of her marriage with Hoffman, her connection with Hoeger and the birth of the child. He was a married man at that time, living in the immediate neighborhood, and on friendly

and rather intimate terms with the defendant and her mother. Having become a widower, he paid court to the defendant, after she separated from Hoeger, and, as I have said, with full knowledge that the child she was rearing was Hoeger's child, and had taken his name, he married her. They lived together for a short time, and then separated.

The effect of the previous marriage with Hoffman was to render void any kind of marriage contract that may have been supposed to exist between the defendant and Hoeger, for, at the time of their connection, only two or three years had elapsed from the time of Hoffman's disappearance.

This leaves the only question in the cause whether the presumption of the death of Hoffman, at the time of the ceremony of marriage between the complainant and defendant, was sufficient to legalize that ceremony.

The law applicable to the facts is perfectly well settled. Independent of our statute, there is a presumption against the continuance of life after a long absence, without evidence of continuing life. At the common law the turning point was fixed at seven years. *Best. Ev.* § *409,* and cases cited to the American edition. The common law presumption is made imperative by our statute (*Rev. Stat. p. 1187*). *Osborn* v. *Allen, 2 Dutch. 388 (per Chief-Justice Green)*; *Hoyt* v. *Newbold, 16 Vr. 219; Clarke* v. *Canfield, 2 McCart. 119 (per Chancellor Green)*. In *Osborn* v. *Allen* Chief-Justice Green said: "All the proof that can be required or expected is that the party has been absent from the state, or from his family or home, and has not been heard from within the period prescribed by the statute. The effect of the statute was simply to define the limits and direct the application of an ancient rule of the common law, which had been adopted and applied by existing English statutes to certain specified cases." And in *Hoyt* v. *Newbold* all the authorities are collected by Justice Parker, and the same doctrine laid down and extended to a case where a man had been absent from the state for a great many years, and title was sought to be made through him, by deed purporting to be executed by a man of the same name in California, without proof of his identity.—*Held,* that the title failed.

Numerous other authorities to the same effect were cited by the counsel for the defendant, among them a well-defined line of cases which holds that where the validity of a marriage is involved, the courts will presume death, under some circumstances, in less than the statutory period. I do not deem it necessary to cite or rely upon those cases. It is sufficient to say that there is not the slightest evidence disclosed by the case that the complainant was in anywise imposed upon by the defendant. He was a man of mature age, thoroughly able to take care of himself. He knew all about the defendant and her history, and she made no false representations to him.

Under the circumstances I think the death of Hoffman must be presumed, and, according to the case of *Clarke* v. *Canfield, supra,* it cannot be presumed to have occurred until about the year 1897, long after her connection with Hoeger had ceased; but it must be presumed to have occurred in that year, and that was prior to her marriage with the complainant.

My conclusion is that the complainant is not entitled to the relief prayed for, and the bill must be dismissed, with costs.