## ANNIE A. SPILTOIR

*v.*

## GUSTAV E. SPILTOIR.

### [Decided June 15th, 1906.]

1. Presumption of death, after an unexplained absence of seven years, does not arise where the supposed decedent has been heard from and there is reliable information that he was alive within four years.

2. *1 Gen. Stat. p. 1187* provides that anyone absenting or hiding himself for seven years shall be presumed to be dead "in any case wherein his or her death shall come in question," and provides for the property rights of the parties on the return of the supposed decedent. *P. L. 1898 p. 808* § *52* relieves from criminal punishment a wife who in good faith marries after the husband has absconded, but does not legitimatize such second marriage.—*Held,* that *1 Gen. Stat. p. 1187* has no application to a proceeding for divorce against an absconding husband not heard from, and hence will not prevent the granting of a divorce.

---

On exceptions to the master's report dismissing petition. Exceptions sustained, and decree granting divorce advised.

The report of the master is substantially as follows: That on the 29th day of June, 1897 (this is an error for 1898, and the wife corrected her testimony in this respect), the parties were and had for a long time been living together as man and wife in this state, where they had been married; that on the day last named the defendant deserted the petitioner. The report then continues: "And I do further report that since June 29th, 1897, so far as the testimony in this case shows, the defendant has not been seen or heard of. Where he went, when he left the petitioner, is unknown. Various persons who would have been likely to hear from him had he been alive were produced as witnesses, but their testimony is that they have heard nothing from him. The testimony undoubtedly warrants the conclusion that when the defendant went away he intended to desert his wife. In view of these facts my opinion is that it is necessary for the petitioner to overcome the presumption of death which arises by reason of the statute entitled 'An act declaring when the death of persons absenting themselves may be presumed,' passed March 7th, 1897. *1 Gen. Stat. p. 1187.* Naturally, as I view the case, it is important that the petitioner show that the defendant is alive in order to maintain the suit at all, and for that purpose she should overcome this presumption by some proof. I do therefore report that the petitioner's petition should be dismissed." To this finding the petitioner excepts.

*Mr. George D. Mulligan,* for the exceptant.

P.ITNEY, V. C.

I agree with the learned master in the result at which he has arrived that the defendant willfully deserted the petitioner on the 29th day of June, 1898, and that such desertion and its continuance from that time was willful and obstinate. But I am unable to agree with him in his conclusions—*first,* that the evidence warrants the presumption that the defendant was, at the time of the hearing before him, dead; and *second,* that our statute regulating presumptions in such cases has any application to the present case. The evidence is clear that the petitioner heard of her husband, and had reliable information that he was

alive, within four years.   The general common-law rule of pre-
sumption of death after an absence without being heard from
for seven years is held strictly, and reliable information that the
party is living within that time is usually fatal to the presump-
tion, although juries, especially in criminal cases, have been per-
mitted to presume death in a less period of time, and are entitled
also to take into consideration a great variety of circumstances,
including the state of health and the motives which impelled the
absenting party to leave his home and disappear.   But in civil
cases involving the devolution of title to land or the succession to
personalty, the rule has been held more strictly.

The statute of this state (*1 Gen. Stat. p. 1187; P. L. 1895
p. 751*) is as follows:

"That any person, whether a resident of this state or not, who shall
remain beyond sea, or absent himself or herself from this state, or from
the place of his or her last-known residence, or conceal himself or herself
in this state, or in the place of his or her last-known residence, for seven
years successively, shall be presumed to be dead, in any case wherein his
or her death shall come in question, unless proof be made that he or she
were alive within that time; but an estate recovered in any such case,
if in a subsequent action or suit, the person so presumed to be dead shall
be proved to be living, shall be restored to him or her who shall have
been evicted, and he or she may also demand and recover the rents and
profits of the estate during such time as he or she shall have been de-
prived thereof with costs of suit; provided, however," &c.

Now, it seems to me that the very reading of that act shows
that it was intended to apply wholly to cases where property
rights were involved, arising out of descent or succession, and
that it is impossible to apply it to the present case.   This is too
plain for argument.   Notice the words, "in any case wherein his
or her death shall come in question."   Now, the death of the
defendant did not come in question in this case.   It was not an
issue raised by the pleadings, and whatever evidence is found in
the case tending to show an absence of seven years came out inci-
dentally.   It seems to me to approach the absurd to hold that a
married woman becomes a widow to all intents and purposes as
soon as her husband has absented himself from the state for seven
years.   Our Crimes act (*P. L. 1898 p. 808 § 52*), which relieves
an innocent spouse whose husband has absconded, and who, on

the strength of that absence, marries again, does not legitimatize the second marriage or its issue if the former spouse be found later on to be living. It simply relieves the innocent party from criminal punishment. It does not in anywise impugn or create any exception to the first section of the act of April 3d, 1902 (*P. L. p. 490*), declaring absolutely void a marriage contracted by a party who has another spouse living. A person situate as is the petitioner here, who marries again without procuring a divorce, does so entirely at his or her peril as to the validity of the marriage and the legitimacy of the offspring. See *1 Bish. Mar. & D.* §§ *717, 1812*.

In some other states of the union the section of the statute above cited, relieving an innocent spouse from criminal prosecution, is accompanied with other provisions giving the issue of such a marriage a sort of legitimacy. This subject was considered by the supreme court of Massachusetts in an opinion delivered by Chief-Justice Gray in 1874. *Glass* v. *Glass, 114 Mass. 563.* There a party, situate as is the petitioner here, married a second time; both she and her husband believing that the first husband was dead, and founding their belief on his absence for seven years. He afterward appeared, and the second husband brought suit for a declaration of nullity. The learned judge, in delivering judgment, used the following language: "It must be assumed, upon the report of this case, that the second marriage was contracted by both parties in good faith and with the full belief that the respondent's former husband was dead. As he had been absent for seven years, they might not be guilty of polygamy. *Gen. Stat. 1860 c. 165* §§ *4, 5.* But as he was in fact still living, and the first marriage had not been dissolved by a decree of divorce, the respondent was in law his wife, her second marriage was unlawful, and the information which both parties to it had on the former marriage, and of the circumstances connected with the absence of the former husband, cannot estop either to apply to the court for a decree of nullity." The case of *Burkhardt* v. *Burkhardt, 63 N. J. Eq. (18 Dick.) 479; 52 Atl. Rep. 296,* properly understood, is not inconsistent with this view. There the husband sued his wife for a decree of nullity by reason of her previous marriage contract with one Hoeger. The wife's

answer was twofold. *First,* that there had been no marriage with Hoeger, although she had lived with him in adultery and borne a child by him, and this was found as a fact by the vice-chancellor, and rendered any further observations unnecessary and *obiter.* The *second* defence set up by the wife was that at the time of the supposed marriage with Hoeger she had a former husband, one Hoffman, still living. The proof was that she was married to Hoffman and was living with him, and that he had run away by reason of having killed a boy in an accident only two or three years before her supposed marriage with Hoeger, but at least eight years before her marriage with the complainant. Diligent inquiry had been made for Hoffman, and clear proof was made in support of the second branch of the defendant's answer that he had not been heard from for more than seven years before she married the complainant. Under these circumstances, and especially as the complainant was well acquainted with them all before he married the defendant, the vice-chancellor refused relief. There it will be perceived that the death of Hoffman did come directly in question. The case is not authority for the position that if seven years after Mrs. Burkhardt's first husband, Hoffman, had absconded, and had not been during that time heard from, she had sued him for divorce on the ground of desertion, and it had incidentally appeared that she had not heard from him for seven years, the court would have denied her a decree.

It seems to me that the distinction between the two cases is clear enough, and that it is the duty of the court to grant relief in such cases and relieve the deserted spouse from an equivocal position. The references cited from Professor Bishop and the case of *Glass* v. *Glass* were not brought to the attention of the court in *Burkhardt* v. *Burkhardt,* and I take the liberty of saying that anything said by the court in that case in conflict with those authorities was not law, and was, as before remarked, mere *obiter.* It must be borne in mind that, in the absence of direct proof of death, the possibility of the life and return of the absent spouse exists, precisely as it did in the Massachusetts case; and if in this case the petitioner, relying upon a decree of dismissal entered upon the advice of the learned master, should marry again

and bear children, and her former husband should return or actually be living, these children would occupy a most uncertain position in the matter of their legitimacy. For these reasons, I think that every consideration of public policy and common justice impels towards granting a divorce in this case.

If it be said that it is inconsistent with fundamental principles to grant a divorce against a dead man, the answer is twofold: *First,* there is no certainty, in the ordinary sense of that word, that the defendant is dead. The presumption arising from his long absence is but a presumption at best, adopted as a convenient and necessary substitution for proof in order to avoid a deadlock in business affairs. See *Best Ev.* §§ *408, 409.* In the next place, a decree of divorce is peculiar, in that it is not in itself a decree or judgment *in personam,* although the ancillary remedy for alimony may be such. It is, in effect and substance, a judicial declaration of a status or condition. It declares that the parties are free and clear of the marriage relation. And certainly if the defendant be dead the petitioner is free and clear of the marriage relation, and the declaration or decree to that effect does him no harm. In all cases of divorce on account of desertion the real ground of the relief is that the defendant is dead as to the complainant or petitioner.

Finally, I feel quite sure that many divorces have been granted in this state on the ground of desertion, where the deserting spouse has not been heard of for more than seven years, and I am free to confess that the point taken by the learned master in this case is, so far as I am concerned, quite novel.

I will advise an order sustaining the exceptions and a decree of divorce.