Bessie Veselsky, Appellee, v. The Bankers Life Company, Appellant.

Gen. No. 32,371.

Opinion filed March 26, 1928.

MONTGOMERY, HART & SMITH, for appellant.

TAYLOR, MILLER, BUSCH & BOYDEN, for appellee; PRESTON BOYDEN, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff, as beneficiary in an insurance policy issued by the defendant upon the life of her husband, Joseph Veselsky, brought suit alleging that he had died on or about July 19, 1924, while the policy was in

force. At the conclusion of the plaintiff's case the defendant moved that the jury be instructed to return a verdict in its favor, which motion was denied. Defendant did not present any evidence. The jury returned a verdict for the plaintiff and judgment was entered against defendant for $10,000, from which it appeals.

The sole controverted question is whether there was sufficient evidence from which the jury could properly conclude that Joseph Veselsky had come to his death from drowning on or about July 19, 1924.

There is little, if any, dispute as to the facts. Joseph Veselsky was born in Bohemia, and in the summer of 1924 was about 50 years old. He was married to plaintiff in October, 1894, in Traverse City, Michigan, where they lived for about four years after their marriage and then moved to. Chicago. About 1916 or 1917 they moved to Lake Forest, where he opened a ladies' tailoring establishment. The family at this time consisted of Mr. and Mrs. Veselsky and a son, Leslie. The home and the shop were together. Plaintiff assisted her husband in his tailoring business, doing the lighter work pertaining to dresses.

Witnesses describe Veselsky as a man steady in his work, of good morals, industrious and sober, not of a gloomy trend of mind but rather of a bright temperament, looking on the bright side of things. From the time the business was started there was always plenty of work to do. In April, 1924, the plaintiff and her son moved their home to Berwyn, plaintiff testifying that they separated the home from the shop; that she moved just to get away from the shop. After this, plaintiff went to Lake Forest twice a week, on Wednesdays and Saturdays, assisting her husband in the work. Veselsky also went to Berwyn, usually once a week, on Saturdays, although if he were very busy he would omit a Saturday. The relations between him

and his wife were pleasant. There seems to have been no domestic friction or disagreement between them.

In the summer of 1923 Veselsky had been in the habit of swimming in Lake Michigan. In the daytime he went to the regular public beach where there was a guard, but in the evening went to Woodland avenue, which is approximately half a mile north of the regular public beach. When he went in at night at Woodland avenue, he would not wear a bathing suit. He was not an expert swimmer. He could swim some, about 30 feet, and then go down. It was his habit to undress at the beach at the foot of Woodland avenue.

On Saturday, July 19, 1924, plaintiff and her son Leslie visited the insured at his shop in Lake Forest, arriving there about two o'clock. They made some deliveries to customers for him and spent the remainder of the afternoon in conversation. They noticed nothing unusual about the insured's conversation. He did not complain about his health or the condition of his business but was engaged in his usual work of tailoring and pressing. Plaintiff changed the bedding on her husband's cot before she left for Berwyn. Her husband gave her $63 with which to pay her rent. She and her son left Lake Forest about seven o'clock in the evening. There is no evidence that the insured was seen by anyone after this time.

On the following Monday, about noon, the superintendent of an estate adjacent to Lake Michigan found some clothes on the beach about 30 or 40 feet from the water under some bushes. They were men's clothes consisting of a suit, shoes, underwear and a straw hat. There was a belt with the insured's initials on it. In the coat was a card containing the name of J. B. Veselsky and indicating that he was a member of the Highland Park Chapter of the Masonic Order. The police were notified, the clothes were taken to the station and Mrs. Veselsky notified. Sunday night was

stormy. One witness describes it as a very stormy night with considerable rain, thunder and lightning. Plaintiff went to the tailor shop of her husband on Monday and talked to the police officers who showed her the articles of clothing which she identified as her husband's. She said that she found at the shop all the other clothes that her husband owned. There was nothing missing. The cot on which her husband slept had not been touched since plaintiff left it on Saturday. She stated that her husband usually cleaned the shop Saturday evening and she noticed on Monday that it appeared cleaner than when she had left there Saturday. She did not make any search for her husband beyond going to the morgue, the coroner's office and the police and watching the papers. She says she relied on the police, "that sometime, somewhere the body will be found" and had hopes of this until the following spring. Her husband had two sisters, one in Chicago and the other in Traverse City, Michigan. She was somewhat uncertain as to their present residence but this was the last of which she knew. He had no father or mother living that she knew of. She did not attempt to communicate with her husband's relatives. In the early spring of the next year she saw something in the paper regarding the recovery of a body from the lake and went to the coroner's office and the morgue in an attempt to identify it, but it was not the body of her husband.

A police officer of Lake Forest testified that he dragged that part of Lake Michigan with a boat and grab line all day Monday and Tuesday, covering the territory for 400 feet each way from Woodland avenue and out for about half a mile, but no body was found. There was testimony indicating that at this point there was an undertow at times. The bank balances of the insured showed nothing unusual or different from the average balances.

Death, like any other fact, may be proved by circumstantial evidence alone, *Fidelity Mut. Life Ass'n v. Mettler,* 185 U. S. 305, and the presumption of the continuance of life prevails until facts are shown which make the presumption of death more reasonable. Where there is no legal presumption of death arising from a disappearance for seven years, the presumption which will justify the conclusion of death must arise from evidence of circumstances tending to prove this fact. *Donovan v. Major,* 253 Ill. 179.

A great variety of cases have been cited in the briefs of respective counsel. In some of these, contrary conclusions are drawn from substantially similar facts. Defendant cites *Nelson v. Masonic Mut. Life Ass'n,* 57 App. Div. 214, 68 N. Y. S. 290, in which Nelson was last seen by a person to whom he spoke of his intention to go swimming. He was never seen nor heard of again. On the following morning his clothing was found in the locker of a beach bathhouse. The court concluded that the evidence was not sufficient to raise a presumption of death, basing its conclusion upon the fact that, when last seen, he was in a safe place—his own office in New York City—which is some distance from Brighton Beach where his clothes were found.

Plaintiff's counsel refer to *Lesser v. New York Life Ins. Co.,* 53 Cal. App. 236, in which case Lesser left his hotel during the forenoon, saying that he was going to the beach. Later in the day he was seen in his street clothes within a few feet of a bathhouse talking and laughing with another man. He was never seen again. During that evening his clothes were found in one of the beach bathrooms. No body identified as his was ever recovered. The judgment for the plaintiff was affirmed. In its opinion the court referred favorably to the reasoning in *Tisdale v. Connecticut Mut. Life Ins. Co.,* 26 Iowa 170, where it was held that evidence that one who had lived a long life

as an honored and upright citizen, in domestic felicity, fond of his friends, with no disconcerting habits or affections, and who disappears in a distant city, raises a presumption of death, for "absence from any other cause, being without motive and inconsistent with the very nature of the person, is improbable." The opinion in the *Lesser* case concludes: "The very nature of such cases is to the effect that the weight of the evidence is a question for the jury."

In the opinion in *Northwestern Mut. Life Ins. Co. v. Stevens,* 71 Fed. 258, is a well-reasoned statement of the general circumstances to be considered in such cases. It was there very properly said that two cases of disappearance in which the facts are exactly alike will probably never arise, and the strength of the presumption of either life or death will never be the same in any two cases; that while there is a presumption that one continues to live for seven years after his disappearance, this presumption is not conclusive but may be overcome when all the facts and circumstances of the case and the possible motives, if any, for disappearing or returning to his family are considered, and if these take the case out of the category of an ordinary disappearance and are such as would lead the unprejudiced minds of reasonable men, exercising their best judgment, to the conviction that death had intervened before the expiration of seven years' disappearance, the presumption of continued life is overcome.

Counsel for defendant asserts that the correct rule in this State is stated in *Donovan v. Major,* 253 Ill. 179, where a youth named Wright had disappeared for something less than seven years. It was there said that disappearances of individuals are not uncommon and no legal presumption of death arises from the disappearance alone; that such presumption must arise from circumstances such as where the absentee was exposed to some specific peril like sailing in a vessel

which had never been heard from, or being a passenger on an ocean steamer in mid-ocean at night, threats of suicide or the desperate condition of his health. Defendant argues that this establishes the rule that before an absentee can be presumed to have met death before the lapse of seven years, the evidence must show that he was in some position of peril where the chances were that he had succumbed to the peril. We do not read this opinion as deciding what particular set of circumstances may raise the presumption of the death of an absentee, but rather as indicating, in general, the type of circumstances which may give rise to such a presumption. However, it can truthfully be said that an indifferent swimmer, as Veselský was, in Lake Michigan would be in a place of peril.

Applying as nearly as possible the general principles stated in the foregoing and other like cases to the instant facts, we conclude that the question of whether Joseph Veselsky came to his death by drowning on the date alleged was a question of fact for the jury to determine. When a person's clothes are found on a lonely beach and no one is seen either on the land or in the water to whom they belong, the mind instinctively suspects that the owner has drowned. This would be the usual and a reasonable suspicion. If the clothes are subsequently identified as belonging to a nearby resident, who is never seen again even after a lapse of years, and there is nothing in his domestic or business relations to furnish a motive for voluntary disappearance, the suspicion first entertained ripens into a belief that the absent one came to his death by drowning.

That Mrs. Veselsky was calm is said to indicate that she knew her husband was alive. If she were a party to such a fraud, one would expect her to simulate excessive grief. Her restraint argues her honesty. Emotional reactions do not appear in fixed forms. Sadness does not always wear the same garment.

There are sorrows "that do often lie too deep for tears."

That she did not notify her husband's relatives may be explained by the fact that she had not been in touch with them for a long time and was evidently somewhat uncertain as to where they lived.

It is argued that the presumption that the insured was drowned rests upon the presumption that he was swimming or in the water and that one presumption cannot rest upon another. This is not a case of two presumptions. There is simply one general presumption—that he lost his life in the water. *Fanning v. Equitable Life Assur. Soc. of United States,* 264 Pa. 333, 107 Atl. 715.

Considering all the circumstances, we cannot say that the verdict is manifestly against the weight of the evidence. The judgment is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.