Julia E. Campbell, Appellee, v. The Northwestern Mutual Life Insurance Company, Appellant.

Gen. No. 8,923.

Opinion filed July 6, 1935.

SAMUEL J. STEPHENS, of Aurora, for appellant; EDRIE P. HAZLETT, of Aurora, of counsel.

Lewis M. Long and David J. Peffers, of Aurora, for appellee.

Mr. Justice Dove delivered the opinion of the court.

This action was instituted September 28, 1933, by Julia E. Campbell, the beneficiary named in an insurance policy issued by the defendant upon the life of her husband, Alexander M. Campbell. In both counts of the declaration the policy was set forth *in haec verba* and in the first count it was alleged, among other things, that the policy was issued on August 16, 1915, and that Alexander M. Campbell, the insured, thereafter died at Reno, Nevada, on August 11, 1920; that on May 23, 1933, the plaintiff gave the defendant notice of the insured's death and at the same time furnished and delivered to it satisfactory proof of death. The additional count averred that the policy was continued in force from February 16, 1918, as extended term insurance for the sum of $2,046 until September 9, 1921. In this count it was then averred that during the years 1918 and 1919 the insured became in a bad and precarious state of health and early in the year 1919 left his family, he then living in Detroit, Michigan, and went to Reno, Nevada, for the benefit of his health; that on August 10, 1920, he wrote an affectionate letter to the plaintiff from Reno, Nevada, in which he told of the condition of his health and expressed the hope of reuniting with his family at some time in the near future; that after the receipt of said letter, which was mailed at the Reno post office on August 11, 1920, plaintiff never received any further letters or communications from her husband, although she made diligent efforts and inquiries to locate him. In this count she averred that the insured departed this life between August 11, 1920, and September 1, 1921, while said policy was in full force and effect as extended term insurance,

It was then averred that the plaintiff, in April, 1922, notified the general agent of the defendant of the disappearance of the insured and various communications which passed between the plaintiff and the defendant are set out at length.

To this declaration the defendant filed a plea of the general issue, with notice of special matters of defense, in which notice the defendant set up that the policy sued on lapsed on February 16, 1918, for failure to pay the semiannual premium due thereon at that time; that the premium due February 16, 1918, had not been paid, nor had any premiums been paid since that time; that the policy was continued in force, however, as extended term insurance for $2,046 until September 9, 1921. The defendant further insisted in its notice of special matters in defense that the insured did not die prior to September 9, 1921, that he is not dead, that no proof of death had ever been furnished the defendant as provided by the policy, that the contract of insurance is not effective and for these reasons the plaintiff was not entitled to maintain her action. The case was submitted to a jury, resulting in a verdict and judgment in favor of the plaintiff for $2,046 and the defendant brings the record to this court for review by appeal.

It is insisted by counsel for appellant, as grounds for reversal, that much incompetent evidence was admitted by the trial court over their objection, that the instructions were erroneous, that due proof of the death of the insured was not furnished appellant and finally even conceding that the objected-to evidence was competent it is insufficient to sustain the verdict and that the trial court should have directed a verdict in favor of appellant at the close of all the evidence.

As the judgment must be reversed for the reason last suggested, it will not be necessary for us to consider the other errors relied upon for reversal.

The evidence discloses that the policy which formed the basis of this suit was issued by appellant on August 16, 1915. It was an ordinary life policy and provided for the payments of semiannual premiums of $26.62 on the 16th day of August and February of each year during the lifetime of the insured. The policy stated that the age of the insured was 34 years and appellant obligated itself to pay to appellee, upon receipt of due proof of death of the insured, the sum of $2,000. The last premium was paid in August, 1917, but by the provisions of the policy, it continued in force for the sum of $2,046 as extended term insurance until September 9, 1921, and thereafter had no value. The evidence tends to further prove that appellee and the insured were married in 1905 at Rockwell, Iowa, and shortly thereafter came to Sandwich, Illinois, where the insured worked for several years, leaving Sandwich in 1917 for Detroit. From 1917 until April, 1919, the insured and appellee resided in Detroit. He was a good husband and he supported appellee and they never quarreled. In October, 1918, he became sick, was weak and coughed a lot and could not stand up any length of time and that condition continued until he left Detroit in April, 1919. From Detroit insured probably went to Louisville, Kentucky, as appellee received from him several post cards, all bearing the postmark of Louisville, and showing that they were mailed there during the month of May, 1919. Appellee also received one postal written by insured and purporting to have been sent from Tia Juana, Mexico. Appellee thereafter received a letter from the insured bearing the postmark of Reno, Nevada, and dated August 11, 1920. In this letter he stated that he was pretty well, weighed 132 pounds and requested a kodak picture of his wife and son. Appellee, at the time she received this letter, was visiting her sister at Glasgow, Montana, and in it he

requested her not to go back East, as he would send for her, stating that he was going to Fallon the next week and would be there three or four days. In January, 1921, and again in March, 1923, appellee advertised for her husband in the Reno, Nevada, Evening Gazette, and in April, 1922, advertised for him in the War Cry, a Salvation Army paper published in Chicago. She also wrote the chief of police in Reno in 1921 and to the Salvation Army in Chicago in 1922 about her husband and received replies to the effect that they were unable to locate him. Appellee never received any information concerning the whereabouts of insured and had no communication from him after the letter of August 11, 1921. She did not comply with the wishes of the insured when he asked her not to go back East, but left Glasgow the latter part of August, 1920, and came to Sandwich, Illinois, where she has resided ever since. Jesse F. Seamon testified on behalf of appellee to the effect that he was in Reno, Nevada, on July 4 or 5, 1920, and that he saw the insured there and that he had not shaved for a week and appeared to him to have lost weight since he had seen him in 1912; that he looked to him like a sick man as he had a bad cough and did a lot of spitting; that he, Seamon, went with the insured into a place which he designated as a "blind pig," where the insured claimed to be working and they had a glass of beer there together. Anna May Mattison testified for appellee that during the years 1914, 1915 and 1916 she lived with the appellee and insured in Sandwich and that their family relations were pleasant up until they moved from Sandwich to Detroit in 1917.

The foregoing is substantially all the evidence offered on behalf of appellee, and the only evidence offered by appellant was to the effect that the relatives of the insured all lived in Sandwich and Aurora and that Harley Owen saw the insured in Detroit,

Michigan, during the month of February, 1919, that he, Owen, went with him to the movies and that he was with him approximately three hours each of the three times that he saw him, and that at those times the insured did not cough, but looked well and appeared to be in perfectly normal health, weighing about 140 pounds.

Appellee insists that the only reasonable deduction that can be drawn from the foregoing testimony is that the insured was afflicted with consumption and that when he met Seamon on July 4 or 5, 1920, he was undoubtedly in a desperate and precarious state of health; that the inference to be drawn from the fact that no tidings have ever been received from him since the letter which was postmarked August 11, 1920, is that he suddenly departed life somewhere in the wilds of Nevada shortly thereafter and that from all the facts and circumstances in evidence the jury were warranted in finding that he died while the policy sued on was in full force and effect as extended term insurance.

In support of this contention counsel cite *Veselsky v. Bankers Life Co.*, 248 Ill. App. 176, and 17 C. J. 1169. In the *Veselsky* case, which was an action upon an insurance policy in which it was alleged that the insured died on or about July 19, 1924, it appeared from the evidence that the insured was engaged in the business of tailoring and pressing; that he was in the habit of swimming in Lake Michigan at night and when he did so he did not wear a bathing suit; that he was not a good swimmer and at times where he swam there was an undertow. He was an industrious man of good morals, sober and his family consisted of his wife and son and his domestic relations were pleasant. His place of business was in Lake Forest and their home in Berwyn. His wife assisted in the work and usually

on Saturdays he went home while the rest of the time he slept at his place of business. On Saturday, July 19, 1924, his wife and son were at his shop and left him about seven o'clock that evening and he was never seen thereafter. On the following Monday, all his clothes were found on the beach 30 or 40 feet from the water under some bushes. Sunday night was very stormy. The cot upon which he slept when he remained at the shop and which his wife had fixed on Saturday had not been touched since her visit Saturday evening. The officers dragged that part of Lake Michigan adjacent to where the clothes were found, but the body was never recovered. The court in its opinion in affirming a judgment against the insurance company cited numerous cases from which the court concluded that the question of whether the insured came to his death by drowning on the date alleged was a question of fact for the jury to determine and then said: ''When a person's clothes are found on a lonely beach and no one is seen either on the land or in the water to whom they belong, the mind instinctively suspects that the owner has drowned. This would be the usual and a reasonable suspicion. If the clothes are subsequently identified as belonging to a nearby resident, who is never seen again even after a lapse of years, and there is nothing in his domestic or business relations to furnish a motive for voluntary disappearance, the suspicion first entertained ripens into a belief that the absent one came to his death by drowning.'' In disposing of the contention that the presumption that the insured was drowned rests upon the presumption that he was in the water and that one presumption cannot rest upon another, the court said that this was not a case of two presumptions. There is simply one general presumption and that is that he lost his life in the water. We think the facts in the instant case are clearly distinguishable from the facts

in the *Veselsky* case. The proof there was convincing to all reasonable minds, while here there are no facts or circumstances in evidence which rebut the presumption that Campbell continued to live until the end of the seven-year period. It is true that the evidence disclosed that the insured coughed and spit, but there is no medical testimony in this record or any other kind of testimony which establishes that coughing and spitting indicate any special disease and there is no evidence other than that he coughed and spit and looked bad from which it can be inferred that he had consumption and there is no proof that he was afflicted at any time with any disease likely to undermine his constitution. In the *Veselsky* case, from all the facts and circumstances in evidence, the jury were warranted in arriving at the conclusion that he was drowned; in the instant case we do not believe that from all the facts and circumstances all reasonable minds would conclude that the insured died shortly after August 11, 1920, or at any time between that date and September 9, 1921, and if he did so die, the query then would be, from what disease did he die? Seamon, so far as this record discloses, was the last person who saw the insured, and that was on July 4 or 5, 1920, and the insured at that time was working in an illegal liquor dispensary and had a glass of beer with Seamon. More than a month later he wrote to his wife that he was feeling better and was going to Fallon, Nevada, 100 miles distant from Reno.

We have examined 17 C. J. 1169 and some of the cases there cited. There is no necessity discussing these cases. The law in disappearance cases is well settled in this State. If a person is absent from his home and no word has been received from him within seven years, such disappearance creates a rebuttable presumption that such absent one is dead. *Keystone Steel & Wire Co. v. Industrial Commission,* 289 Ill.

587; *Apitz v. Supreme Lodge Knights & Ladies of Honor,* 274 Ill. 196, aff'g 196 Ill. App. 278; *Reedy v. Millizen,* 155 Ill. 636. This presumption arises at the end of the seven-year period and his death is to be regarded as having taken place seven years from the date of his disappearance. *Donovan v. Major,* 253 Ill. 179; *Whiting v. Nicholl,* 46 Ill. 230. As a matter of law, therefore, unless there are facts and circumstances proven which are sufficient to justify an inference that he died at an earlier date, it must be presumed that the insured, Alexander M. Campbell, lived until August 10, 1927. In *Donovan v. Major, supra,* the rights of the parties to that litigation depended upon the death of Will C. Wright and the date of its occurrence. On April 15, 1893, he had passed his fifteenth birthday and left his home, ostensibly to go to his work as an office boy. He did not return in the evening and a search was instituted. He was a strong, healthy boy and his general health, eyesight and hearing were good. The Supreme Court, in its opinion, recited the facts relied upon to sustain the findings of the trial and Appellate Courts that Wright died prior to the expiration of seven years from the time of his disappearance, and in reversing the judgments of those courts, said:

"The presumption of the continuance of life prevails until facts are shown which make the presumption of death more reasonable. Disappearances of individuals are not uncommon, and no legal presumption of death arises from the disappearance, alone. The presumption of fact which will justify the conclusion of death before the lapse of the time required for the legal presumption must arise from evidence of circumstances tending to show death. That the absentee was exposed to some specific peril; that he sailed in a vessel which had never been heard from, though many months overdue; that he was last seen as a passenger on an ocean steamer in midocean, at night, and was

never seen or heard of afterward though diligent search was made the next morning; that he made threats to commit suicide prior to his disappearance; that the condition of his health was desperate; that he was afflicted with some disease likely to undermine his constitution,—these are circumstances which may be considered as tending to raise a just inference of death. The health, age, habits, disposition, manner of life, pecuniary circumstances and family relations of a person who has disappeared are all proper for consideration in determining whether he probably died before the expiration of seven years.''

In commenting upon this language the Appellate Court in *Apitz v. Supreme Lodge Knights & Ladies of Honor, supra, said*: ''While it is not to be presumed that the court named all the conditions that should be considered in determining whether death occurred before the expiration of the seven-year period, it must be taken as expressing a class of evidence that must be present to justify such a conclusion.'' In the *Apitz* case it appeared that the insured was 41 years of age when he disappeared, that he kept a small grocery store in Chicago, was in good health and mentally and physically in possession of all his faculties. He had a wife and four children and appeared to be much attached to them. He had no business troubles and there was no reason suggested for his disappearance. The only indication that he intended to leave was the fact that he paid the assessment upon his insurance policy in advance and settled with his creditors. He left home about noon and was never seen or heard from by his family thereafter. These facts, the court held, were not sufficient to sustain a finding that the insured died within one year of the date of his disappearance.

In the instant case when the insured left he and his family were living in Detroit. When he last wrote his

wife she was in Glasgow, Montana. Shortly thereafter she came to Sandwich, Illinois, and has since that time resided there. In April, 1925, she filed a bill for divorce on the grounds of desertion and in June of that year obtained a decree. She testified upon that hearing that the insured left her in April, 1918, while the evidence in the instant case discloses that he left in April, 1919. Counsel for appellant insist that by instituting this divorce proceeding, appellee believed her husband alive in 1925 and that her position then is inconsistent with her position now which is that her husband died prior to September 9, 1921. We do not think the fact that she procured a divorce in 1925 makes very much difference in this case, as it appears from the evidence that the reason she did so was because her husband's mother had died, leaving some property and she sought to reach his inheritance.

In order for appellee to recover it was essential upon her to prove that the insured died while the policy sued on was in force. The policy expired as extended term insurance September 9, 1921. The facts relied upon by appellee to show that the insured died at an earlier date than August 10, 1927 (that being the date the law presumes he died, such presumption arising by reason of his absence of seven years) are that he was sick in the fall of 1918, that he was weak and coughed and when last seen in July, 1920 appeared to have lost weight, looked sick, coughed and spit and notwithstanding efforts had been made to locate him, he has never been found. These facts in our opinion are not sufficient to rebut the presumption of continuance of life until the expiration of the seven-year period. The evidence relied upon here by appellee gives rise to nothing more than a surmise or conjecture that the insured died while the policy sued on was in force and appellee having failed to prove this

essential allegation, the trial court should have granted appellant's motion for a peremptory instruction.

The judgment of the circuit court of Kendall county is therefore reversed, and the cause remanded.

*Judgment reversed and remanded.*