## Bethel Davis, Appellee, v. Metropolitan Life Insurance Company, Appellant.

Opinion filed May 8, 1936.

KRAMER, CAMPBELL, COSTELLO & WIECHERT and JOHN C. ROBERTS, all of East St. Louis, for appellant.

DALE G. HYLE, of Granite City, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff brought this action to recover on an insurance policy issued by the defendant upon the life of her husband, Robert Carson Davis. The complaint alleges that the insured disappeared from his home August 2, 1927, and that he was presumed to have died on said date. The suit was not filed until after the expiration of seven years from the date of his disappearance. Defendant's answer denied that the insured died on said date and as a further defense alleged default in the payment of the semiannual premiums due November 27, 1927. The case was tried with a jury resulting in a verdict and judgment for the plaintiff for $1,023.87, the full amount of the policy plus accumulated dividends.

As grounds for reversal, defendant urges that the court erred in overruling its motions for a directed verdict, for judgment notwithstanding the verdict and for a new trial.

For a proper consideration of the questions raised by said assignments of error, it is necessary to first consider some of the provisions of the policy which were set up in the defendant's answer.

The policy provided that if default occurred in any of the semiannual premiums after three full years of premiums had been paid, the owner had the option any time within 90 days after such default to elect to take, first, the cash surrender value; or, second, to have the insurance continued for a reduced amount of non-participating paid-up insurance payable upon the

death of the insured; or, third, to have it continued for the original amount of $1,000 as term insurance. If no election was made within 90 days after due date of premium, the policy automatically became a paid-up nonparticipating policy under the second option. The evidence shows that under this option the policy would become a paid-up nonparticipating policy for $404, plus accumulated dividends of $23.87, while under the third option it would have been a paid-up term policy for $1,000 payable upon the death of the insured any time within 18 years and five months from the date the defaulted premium was due.

Plaintiff contends that after the disappearance of the insured and within 90 days after the due date of the premium, she exercised the option, electing first, to take the cash surrender value and having failed in that on account of the refusal of the company to pay without the written election of the insured, she elected the third option—that is, to take term insurance. The answer to such contention is that the policy reserved the right to the insured to change the beneficiary. Under such a policy her right as beneficiary was a mere expectancy subject to be revoked by the insured at will. *Martin v. Stubbings*, 126 Ill. 387; *Equitable Life Ins. Co. v. Mitchell*, 248 Ill. App. 401; *Mayer v. Illinois Life Ins. Co.*, 211 Ill. App. 285. The option clause provides that the "owner" shall exercise the option. The word "owner" as used here was intended to mean the insured and cannot be construed to include the beneficiary who only had an expectancy. The fact that she had possession of the policy after his disappearance would not make her the owner with the right to exercise the options. The evidence shows that plaintiff had certain conversations with defendant's local agent and certain letters were exchanged between the plaintiff and defendant. She contends that by these letters defendant waived the requirement of the policy

that the election should be exercised by the insured but the pleadings did not raise such an issue and the evidence would not warrant such a finding.

In view of our holding on the matter of election of options, it would follow that if the insured died any time after the expiration of the 90-day period following the premium due date, November 27, 1927, the amount payable would be $404 plus the accumulated dividend of $23.87. The verdict being for the full amount of the policy, to sustain it, it would be necessary to find that the evidence warrants the presumption that the insured died at a time when the policy was not in default and before it automatically became a paid-up nonparticipating policy under the second option.

The evidence shows that plaintiff and Robert Carson Davis were married August 18, 1916, that they had three children and except for the letter hereinafter referred to, the family relationship was pleasant and the insured was attached to his wife, children and their home. They lived in Granite City and owned their home and other property. For eight years prior to his disappearance, he had been employed by the St. Louis Gas and Coke Company but lost his employment a week before his disappearance by reason of some difficulty with his employer, the nature of which is not shown. He was a member of the Odd Fellows, active in its work and until about a year prior to his disappearance had been a regular attendant at church and interested in church activities.

On the date of his disappearance, he conveyed the home in which they resided to his wife and transferred to her all his interest in his loan association stock. He told plaintiff he was going to Chicago to seek employment. He was 35 years of age and had for some time been nervous, restless and losing weight. He is described as looking haggard and tired. After

leaving his home and on the same date, he wrote plaintiff a letter as follows:

"Union Station
St. Louis, Mo.
Aug. 2, 1927.

"Mrs. Bethel Davis:

"I am not going to Chicago. I am going as far in the opposite direction as the trains run. I will never be back unless I am carried. This is no joke. You can make your plans accordingly. As I called to your attention today there is an equity in property, B. & L. Stock, etc. of over $9,000. at fair valuations. With your selling and managing ability you should have no trouble getting along. You may use this letter to help you get things straightened out.

"Why am I leaving?

"I have been thinking it over for a couple of years and now seemed a good time to go. I was not happy, did not care for you or the kids or the home and the load was too heavy.

"I may end up where May is. I always did feel like I was half crazy.

"I wish you all good luck.

"Good bye,
"Carson."

The evidence shows that the inference is that May referred to in his letter was his sister who was mentally unbalanced and had been in an asylum for a number of years.

After the expiration of seven years from the time the insured was last heard of, the presumption that he was alive ceased and the presumption of his death took its place. *Whiting v. Nicholl*, 46 Ill. 230. The law of this State is that when the presumption of death arises at the expiration of the seven-year period, the time of his death is presumed to have been at the end of the seven-year period. *Donovan v. Major*, 253 Ill. 179. Facts and circumstances attending a per-

son's unexplained disappearance may be such that a presumption arises that the person died within the seven-year period. *Veselsky v. Bankers Life Co.,* 248 Ill. App. 176. In *Donovan v. Major, supra,* in discussing the facts and circumstances necessary to be proven to create such presumption, the court said, ''The presumption of fact which will justify the conclusion of death before the lapse of the time required for the legal presumption must arise from evidence of circumstances tending to show death. That the absentee was exposed to some specific peril; that he sailed in a vessel which had never been heard from, though many months overdue; that he was last seen as a passenger on an ocean steamer in midocean, at night, and was never seen or heard of afterward though diligent search was made the next morning; that he made threats to commit suicide prior to his disappearance; that the condition of his health was desperate; that he was afflicted with some disease likely to undermine his constitution— these are circumstances which may be considered as tending to raise a just inference of death.'' The evidence in this case is not sufficient to raise the presumption that the insured died on the date of his disappearance or at any time between that date and the date that the second option in the policy became effective. The fact that he wrote that he thought he was half crazy or that he might become like his sister May, who was insane, creates no inference that he destroyed himself while laboring under such belief. There is no competent evidence of threats of self-destruction. There is no medical testimony as to the nature or extent of his ailments or the course and toll that such ailments might take. The sudden disappearance of one who is suffering from loss of weight, is nervous, worn and tired does not create a presumption that he died soon after his disappearance from such ailments. *Campbell v. Northwestern Mut. Life Ins. Co.,* 281 Ill. App. 158.

The case has been presented in this court on the issue that the evidence does not warrant the finding that the insured died at the time of his disappearance as alleged in the complaint. The verdict and judgment cannot be sustained but we express no opinion as to the sufficiency of the evidence to establish plaintiff's right of recovery under option two of the policy aided by the presumption of death that arises from seven years of unexplained absence.

For the reasons assigned the judgment is reversed and the cause remanded.

*Reversed and remanded.*