Executors of Clarke *v.* Canfield.

Executors of Elizabeth Clarke *vs.* Edgar W. Canfield
and others.

The statute (*Nix. Dig.* 211, § 4,) which raises a presumption of the death
of a person absenting himself for seven years without being heard from,
was designed to furnish a legal presumption of the time of the death, as
well as of the fact of the death.

In the absence of the statute, the presumption would be that the absent
person is still alive. This presumption of the continuance of life only
ceases when it is overcome by the countervailing presumption of death
afforded by the statute, which is not until the end of seven years.

The presumption of death which arises at the expiration of seven years
cannot operate retrospectively.

---

*Browning,* for complainants.

*Grey,* for defendants.

The Chancellor. Elizabeth Clarke, by her will, bearing
date on the twenty-seventh of August, 1852, gave to her
grand nephew, Edgar W. Canfield, a legacy of five hundred
dollars. After other legacies, she gave the residue of her
estate to Elizabeth Woolston. The testatrix died on the
fourth of December, 1852, having left assets sufficient to pay
all the legacies given by her will. The executors, by their
bill, admit the legacy to be in their hands, but allege that
they are unable to ascertain whether Canfield, the legatee, is
actually dead, and if dead, whether he died before or after
the testatrix. If he died before the testatrix, the legacy
lapsed, and falls into the residue of the estate. If he still
survives, it belongs to the legatee. If he died after the tes-
tatrix, it belongs to his infant son and sole next of kin. The
bill prays that the complainants may be decreed to pay the
money to the party entitled to receive the same, or that it
may be invested under the order and direction of the court.

The evidence in the cause is that Canfield, the legatee, re-
sided at Hartford, in the state of Connecticut, in the years
1836 and 1837. That about the close of 1837, or beginning

of 1838, he removed to Lumberland, in the state of New York, where he resided in May, 1839. In 1849, a letter was received from him, by his father, dated on the fourteenth of December, 1849, but without signature and without anything to indicate where it was written. It was believed, from the postmark, to have been dated at Easton, Pennsylvania, though that is not certain, as the postmark was partially obliterated. Since 1849, though repeated inquiries have been made for him at the place of his last residence and elsewhere, nothing whatever has been heard from him.

It is conceded that the evidence brings the case within the operation of the statute (*Nix. Dig.* 211, § 4,) and that at the end of seven years from the time the legatee was last heard from, there arises a legal presumption of his death. But it is urged, that although at the end of seven years the law presumes that the absent party is dead, there is no presumption *when* he died; that the law was designed to furnish evidence of the *fact* of the death, but not of the *time* of the death. This view of the operation of the statute was adopted by the Court of Kings Bench and Exchequer, in *Doe* v. *Nepean*, and appears to be the settled doctrine of the English courts. *Doe ex dem. Knight* v. *Nepean,* 5 *Barn. & Ad.* 96; *Nepean* v. *Doe ex d. Knight,* 2 *Mees. & W.* 894; *In re. Creed* 19; *Eng. Law and Eq.* 19.

The same view appears also to have been adopted in some of the American decisions. *McCartee* v. *Camel,* 1 *Barb. Ch. R.* 462; *Spencer* v. *Roper,* 13 *Iredell* 333.

In *Doe* v. *Nepean,* the lessor of the plaintiff claimed the premises by title accruing on the death of Matthew King, who went to America in 1807, and was never afterwards heard from. The action was brought within twenty years from the *expiration,* but not within twenty years from the commencement of the seven years absence. There was no other evidence to show at what time the party died, and it was held that the claim was barred by the statute of limitations. As against the plaintiff, the absent party was presumed to be alive during the whole period of seven years,

but no such presumption was allowed in his favor. The effect was that the statute of limitations operated against the plaintiff within thirteen years after his right of action accrued.

In the present case this view of the statute must give rise to much more serious embarrassment, and will defeat a recovery of the fund by either party from the impossibility of ascertaining when the legatee died. The child of the special legatee, to entitle himself to recover, must show that the legatee survived the testatrix, otherwise the legacy lapsed. The residuary legatee, to establish her claim, must show that the special legatee died in the lifetime of the testatrix, for in that event alone is she entitled to the fund. And no length of time will remove the difficulty, so that the title to the fund must for ever remain unsettled. Similar embarrassments, it is obvious, will be encountered in numerous cases, in which the aid of the statute may be invoked. A construction which leads to such results ought not to be adopted, except for the most cogent reasons. It will greatly impair the beneficent design of the statute, which was, I apprehend, to furnish a legal presumption of the *time* of the death, as well as of the *fact* of the death. And that design it accomplishes by the fairest rules of interpretation.

The legatee is proved to have been living about three years before the death of the testatrix. The legal presumption, independent of the statute, is that life continues until the contrary is shown, or until a different presumption is raised. *Wilson* v. *Hodges*, 2 *East* 313; 1 *Greenleaf's Ev.*, § 41.

In the absence of the statute, the presumption would be that the legatee is still alive. The design of the statute was, by an arbitrary rule, to fix a definite limit to that presumption of the continuance of life by a contrary presumption that life has ceased. But the presumption of life ceases only when it is overcome by the countervailing presumption of death. And the real question is, not whether the statute furnishes any evidence of the precise time of the death, but

whether it furnishes any evidence of the occurrence of death before the end of the seven years. If it does not, the presumption of life continues, by well settled rules of evidence, independent of the statute. The presumption of death which arises upon the expiration of the seven years cannot operate retrospectively.

There is an apparent, though not a real exception to the rule, that the presumption of life continues in the case of an indictment for polygamy where the wife marries during the absence of the husband before the expiration of seven years. But there the presumption of the continuance of life is overcome by the stronger presumption of the innocence of the party accused. *Rex* v. *Twining*, 2 *Barn. & Ald.* 386.

So there may be circumstances which will create a presumption *in fact* of the death of an absent party within seven years. But this in no wise affects the legal presumption created by the statute, and in the absence of such circumstances the presumption of life continues until arrested by the statute.

It is no answer to say that the probabilities are that the death did not occur at the expiration of the seven years, but at some other time within that period. The time of the death, as well as the fact of death, are presumptions not of fact, but of law. The law regards neither as certain. It simply declares that the party shall be presumed to be dead at the expiration of the seven years, whenever his death shall come in question. The language of the statute, as well as that of 6 *Anne, ch.* 18, and of 19 *Charles* 1, *ch.* 2, for which our statute was designed as a substitute, clearly indicates that an arbitrary rule was designed to be established, by which the rights of parties litigant might be determined in the absence of more unequivocal proof, however inconsistent that presumption might be with the actual truth of the case.

This view of the effect of the presumption created by the statute is sustained by the great weight of American authority. *Burr* v. *Sim*, 4 *Wharton* 150; *Bradley* v. *Bradley*, 4 *Wharton* 173; *Whitesides' Appeal*, 23 *Penn. St. R.* 114;

*Smith* v. *Knowlton,* 11 *New Hamp.* 196; *Newman* v. *Jenkins,* 10 *Pick.* 515; *Eagle* v. *Emmet,* 4 *Bradf.* 124. See, also, *Webster* v. *Berchmore,* 13 *Vesey* 363.

It appearing that the special legatee was in life about three years before the death of the testatrix, the presumption is that he continued in life until after the death of the testatrix, and that consequently the legacy did not lapse. More than seven years having elapsed since the legatee was last heard from, the legal presumption created by the statute attaches. The legatee is now presumed to be dead, and the next of kin is entitled to the fund.

The executors will be chargeable with interest only in the event of their having used or made profit out of the fund.