AARON G. SMITH et al., appellants,

*v.*

JAMES C. McDONALD et al., respondents.

[Filed June 20th, 1905.]

1. The statute of distributions having been amended by the repeal of the proviso limiting representation among collaterals to the children of deceased brothers and sisters—*Held*, that the words "and in case there be no child, then to the next of kindred of equal degree of or unto the intestate and their legal representatives as aforesaid," are to be read in connection with a prior clause in the act which directs distribution to the next of kindred "in equal degrees or legally representing their stocks," and that in the distribution of personal property among collaterals representation is limited to the descendants of the stock represented by the surviving next of kin; that if some first cousins are living, being the only next of kin, they constitute the stock entitled to representation, and there being no great-uncles or great-aunts living, first cousins and the representatives of deceased persons of that class take to the exclusion of the descendants of the deceased great-uncles or great-aunts.

2. The stock entitled to representation are the descendants of the first ancestor in the ascending line common to the intestate, and all the surviving next of kin, the next of kin being of equal degree, taking *per capita*, and descendants of deceased members of the class, as representing their stock.

On appeal from Essex county orphans court.

*Mr. Samuel Kalisch* and *Mr. Frederick E. Hodge,* for the appellants.

*Mr. Edward S. Atwater, Mr. George T. Parrot, Messrs. Condict, Condict & Boardman, Messrs. Raymond & Van Blarcom, Mr. Frederic M. P. Pearse* and *Messrs. E. C. & A. W. Harris,* for the respondents.

BERGEN, VICE-ORDINARY.

Who are the persons entitled to share in the distribution of the personal estate of Cornelia B. Halsey is the question sub-

mitted. She died intestate, unmarried, and left as her next of kin several first cousins, besides whom the descendants of first cousins and the representatives of deceased persons who, if living, would stand in the same degree of kinship as first cousins, claim to share in the distribution of the estate.

The decree of the orphans court confines the right of representation to the descendants of deceased first cousins, and distributes the estate to first cousins as next of kin, *per capita,* and to the representatives of deceased first cousins *per stirpes,* from which decree this appeal was taken.

In 1899 the legislature amended the statute of distributions by repealing the proviso that no representation should be allowed after brothers' and sisters' children, and it is urged by the appellants that the effect of such change is to open the door to indefinite representation among collaterals. The subject, so far as I have been able to ascertain, is without direct adjudication, owing to the fact that for centuries the excised proviso controlled it, and little aid can be had from reported cases; therefore the legislative intent must be ascertained by the construction or interpretation of what remains of the statute, reading the entire act, and not alone the particular paragraph affected by the alteration. As the act now stands, the orphans court is directed, according to section 168, to make distribution "to the next of kindred to the intestate in equal degrees, or legally representing their stocks," and, according to section 169, "and in case there be no child, then to the next of kindred of equal degree of or unto the intestate and their legal representatives as aforesaid."

Under this language the appellants insist that the descendants, however remote, of any deceased collateral, who, if living, would stand in the same degree of kinship with the living next of kin, although of another class of relatives, will take by representation, *per stirpes,* with the living kindred of the same degree which their ancestor would have occupied if living, and put their claim upon the broad ground that if the next of kin were first cousins, all living, they, although as a class representing all the next of kin, will not take to the exclusion of the descendants, *in infinitum,* of deceased great-uncles, and that the

shares of such cousins are subject to diminution in proportion to the number of great-uncles and great-aunts dead leaving representatives; nor would the fact that one cousin was dead, leaving children, affect the situation or strengthen the position of the appellants, for they do not claim that the children of great-uncles take because they are of the same degree as second cousins, but alone upon the ground that descendants of great-uncles represent one who, if living, would be one of the next of kin.

The infirmity of the claim of the appellants rests in the fact that it ignores section 168, which directs distribution to next of kin "in equal degrees, *or legally representing their stocks,*" which means that representation is to be limited to those representing the stock of the next of kin as ascertained by the rule of computation prevailing under the civil law, the accepted method in this state for determining the degree of kinship. This section must be read in connection with subdivision 3 of section 169, and the words "their legal representatives," in the latter clause taken to mean legal representatives of their stocks, and having found a common ancestor of the intestate and the living next of kin, the logical conclusion is that the nearest class of kinsmen descending from that ancestor, together form the stock to which representation is limited. That the words "next of kin," as used in the statute, means living persons, cannot be questioned. There must be some one in being whose proximity in blood will give title to the personal estate, and in ascertaining this person we count from the intestate to the common ancestor of the *propositus,* and the person whose relationship is sought, thence down to that person, and having found the nearest living next of kin we have reached the stock entitled to the fund, among whom alone representation exists. If there should be no issue or parents, the estate would go to the brothers and sisters and their representatives. In that case all the brothers and sisters "*would form a complete stock,*" and on the death of one leaving children these children would take by representation. *Reeve Desc. (preface) 23.* "According to the first clause of the statute, all the stocks are to take." *Wyth* v. *Blackman, 1 Ves. Sr. 201.*

In *Hyatt* v. *Pugsley, 23 Barb. 285, 301*, speaking of the distribution of an intestate's estate, the court said: "And if all his first cousins had survived him they would have inherited equal parts of what descended to them respectively; but as several of them had previously died, the question arises whether or not the cousins must not be assumed as the stock, and the inheritance be divided into as many equal shares as there were first cousins living, or who had died leaving descendants," and it was held that such is the division required by the canons of descent.

In this case the nearest living kin are cousins related in the fourth degree to the intestate. There are no others living of equal degree, and to seek for a more remote ancestor than the grandfather, the progenitor of the stock upon whom the law casts the inheritance for the purpose alone of letting in, by representation, persons of an unequal degree with the living next of kin, would not only be an attempt to provide representation for those who represent no one of a class able to take, but also to furnish a stock not contemplated by the law.

If a great-uncle or great-aunt be alive, then, of necessity, the great-grandfather becomes the common ancestor, and his living descendants, who are the next of kin of the intestate, constitute the stock entitled to representation; that is, it is the stock of the nearest ancestor common to the surviving next of kin and the intestate that is vested with the right of representation. The required ancestor being fixed, representation follows the stock, and if there were no first cousins living second cousins would represent the grandfather of the intestate, for he, being a brother to the great-uncle, the descendants would take along with the descendants of deceased great-uncles and aunts.

On the argument it was insisted that if representation be confined to the immediate class in which survived one of the next of kin, then, if there were no first cousins, but a great-uncle, living, with descendants of deceased great-uncles, that class would take to the exclusion of second cousins, resulting in the exclusion of all descendants of the grandfather; but this argument has no force, because under the rule of unlimited

representation the grandfather, though deceased, would, as brother of the surviving next of kin, be of that class or stock, and be represented by his descendants, which in the case mentioned are second cousins.

My view of the act, as amended, is, that representation is to be limited to the descendants of the stock represented by the living next of kin, and that when you have ascertained the next of kin, all who have descended from the ancestor common to the intestate and the surviving next of kin constitute the stock, the survivors taking *per capita,* the descendants of those deceased taking because they legally represent their stocks. The legislation under consideration has recalled some of the difficulties which beset the English courts ages ago, and to remove which the statute of distribution, with the proviso now discarded, was called into life, and it is to be regretted that the legislative intent was not more clearly manifested; but after a careful consideration of the act as it now stands, I am convinced that the representation intended, and which the act now provides for, is limited to those who represent a stock, some of whom are capable of taking, as statutory legatees, under the designation "next of kindred," and that descendants of that line take as "representing their stocks." The views which I have expressed result in an affirmance of the decree below.

The record brought up discloses that an application was made to the orphans court for the allowance of counsel fees, which resulted in a decree denying the application, from which an appeal has also been taken. I have been favored with a copy of the reasons which influenced the court in making this decree, from which it appears that the judge of the orphans court found no authority in the law to justify the allowance of counsel fees in such cases. The reasons given by the learned judge are unanswerable. The orphans court is a statutory tribunal, with no powers beyond that conferred by law. I am not aware of any statute which confers the power invoked, and therefore the decree of the orphans court on this branch of the case must also be affirmed.

Application has also been made to this court by all the counsel engaged for the allowance of counsel fees, to be paid out of the

fund. The practice in this court of allowing costs and reasonable fees to be paid out of the estate for services rendered for the benefit of those who take the fund,. and who should, in equity, contribute toward the payment of the same, seems to be established. *Munn's Executor* v. *Munn, 20 N. J. Eq. (5 C. E. Gr.) 472.* In my opinion, the counsel who in this case represent the cousins and descendants of deceased cousins should be allowed their costs and reasonable counsel fees to be paid from the fund, upon the ground that the burden and expense of this litigation should not be borne by the few who have defended the fund against distribution among those who, it is held, are not entitled to participate. These services and expenses have held the fund together for a limited distribution, and those benefited thereby should contribute. As the payment from the fund will lay the charge in proportion to the interest acquired by the successful litigation, no more equitable method of contribution could be devised. The reasons which lead courts to order the expenses of the successful party from the fund do not apply to the unsuccessful litigant, and it follows that the application for such allowances on behalf of the appellants will have to be refused. The allowances which I am willing to advise will only relate to services in this court, and before determining the amounts I desire counsel entitled, to furnish me a written statement of the time devoted by them to the preparation and argument of the cause in this court, when I will advise the amounts which, in my judgment, should be decreed to be paid from the fund.