AARON G. SMITH et al., appellants,

*v.*

JAMES C. McDONALD et al., respondents.

[Argued March 15th, 1906. Decided February 2d, 1907.]

Under the statute of distributions as amended in 1899 by striking out the proviso limiting representations to brothers' and sisters' children, the estate, where the intestate's living next of kindred are all first cousins, is to be distributed among the living first cousins and the descendants of deceased first cousins *per stirpes;* the descendants of great-great-grandparents and of great-uncles and great-aunts, who do not come within this description, are excluded.

On appeal from a decree of the prerogative court advised by Bergen, vice-ordinary, whose opinion is reported in *69 N. J. Eq. 765.*

*Mr. Samuel Kalisch* and *Mr. Frederick E. Hodge,* for the appellants.

*Mr. Edward S. Atwater, Mr. Elwood C. Harris, Mr. George T. Parrot, Messrs. Condict, Condict & Boardman, Messrs. Raymond & Van Blarcom* (*Mr. Joseph G. Kammerlohr, Mr. Samuel Ware Packard* and *Mr. De Forest M. Neice,* on their brief), and *Mr. Frederic M. P. Pearse,* for the respondents.

The opinion of the court was delivered by

SWAYZE, J.

This case necessitates, for the first time in this court, a construction of the statute of distributions as amended in 1899. The controversy is between living first cousins of Cornelia B. Halsey and descendants of deceased first cousins, on one side, and descendants of deceased great-great-grandparents and of great-uncles and great-aunts, on the other side. The orphans

court ordered a distribution among the living first cousins and descendants of deceased first cousins *per stirpes,* to the exclusion of descendants of great-great-grandparents and of great-uncles and aunts. This decree was affirmed by the prerogative court and an appeal taken.

We are without help from authority. Prior to 1899 this question could not have arisen. The statute of distributions, as it had stood for centuries, following the law of Justinian nearly fourteen hundred years old, excluded representation among collaterals beyond brothers' and sisters' children. In our statute this limitation was introduced at the end of the paragraph giving a moiety to the widow, instead of at the beginning of the paragraph providing for distribution where there was no widow, as in the statute of Charles II. (*2 Wms. Ex. (6th Am. ed.) 1594*), but this court held, in *Davis* v. *Vanderveer, 23 N. J. Eq. (8 C. E. Gr.) 558,* that the limitation was applicable in a case where the intestate left no widow. The only change made by the legislature in 1899 was the omission of the proviso containing this limitation (*P. L. 1899 p. 204*) in subdivision 2 of section 169 of the Orphans Court act. Section 168 and the other subdivisions of section 169 were left unchanged.

The most important section to be considered in construing the act is section 168, for, as Lord Hardwicke said, in *Evelyn* v. *Evelyn, 3 Atk. 762,* "the rules laid down after the general direction in the act are only so many specifications of particular cases." To reach a correct result, section 168, and those portions of section 169 which are applicable, must be read together.

Section 168 directs the court to order a just and equal distribution to the next of kindred to the intestate in equal degrees, or legally representing their stocks, each according to his or her respective right pursuant to the laws in such cases and the rules and limitations hereinafter set down. Those rules and limitations, so far as material to the present case, direct a distribution to the next of kindred, in equal degree, of or unto the intestate and their legal representatives as aforesaid. The words "as aforesaid" seem to have been used to direct attention to the limitation upon the right of representation among collaterals,

which has been stricken out, and they probably no longer serve any useful purpose.

The distribution, to comply with the statute, must answer the following requirements: It must be just and equal; it must be to the next of kin in equal degree "and their representatives;" it must be to each according to his or her respective right; it must be pursuant to the rules and limitations of the act.

The words "just and equal" are perhaps a little difficult to explain. In one sense any distribution authorized by the statute would be just, for prior to the statute the next of kin were without right to share in the personal estate. *2 Wms. Ex. 1591; Ordinary* v. *Cooley, 30 N. J. Law (1 Vr.) 271* (opinion of Justice Vredenburgh). But the words would have been quite superfluous if nothing more had been meant than a compliance with the statute. I think they had another meaning, and referred to that natural right inherent in propinquity of blood mentioned by Chief-Justice Beasley in *Taylor* v. *Bray, 32 N. J. Law (3 Vr.) 184*, and in *Schenck* v. *Vail, 24 N. J. Eq. (9 C. E. Gr.) 551*. Whatever the law may be, it cannot be denied that a general sense of justice favors the rights of blood, and this sense of justice, as the chief-justice said, appears in the general scheme of our laws on the subject of descent and distribution. Tested by this sense of justice, the first cousins and their descendants seem nearer in blood than great-great-grandparents and their descendants, although great-great-grandparents and cousins are alike related in the fourth degree. The reasons are that great-great-grandparents belong to so remote a generation that they are hardly likely to have been known personally to the intestate, and even their names are probably forgotten; their descendants naturally become so numerous and so scattered that the intestate seldom can have known them, or even have been aware of the relationship, and the passing of three generations makes proof of kinship difficult. We have no reason to doubt the statement in appellants' brief that hardly forty per cent. of the claimants who have been excluded from sharing in this estate will be able to prove legally that they are representatives of an ancestor who, if living, would have stood in equal degree

of kinship to the intestate as the living first cousins. Cousins, on the other hand, are ordinarily contemporaries of the intestate, are known to him and their relationship recognized; while the descendants of first cousins, belonging to a younger generation, are more naturally looked on as having a *spes accrescendi,* to use Lord Hardwicke's expression, in *Evelyn* v. *Evelyn.*

Again, there are eight pairs of great-great-grandparents, and hence at least eight stocks with which the cousins must share if the appellants' contention is sound. In a perfectly conceivable and not improbable case the intestate may have but one cousin. To adopt a construction which would give to that cousin only one-ninth of the estate and distribute eight-ninths to remote relatives, would lead to a result which must shock the sense of justice of most men. Yet that is an understatement of the difficulties to which the construction would lead, for one of each pair of great-great-grandparents may have remarried after the death of the spouse, and since the half-blood share in the personal estate with the whole blood, there may be sixteen stocks to share with the cousin. Such considerations have had weight with the courts in decided cases. The rights of brothers and sisters depend upon the same language of the statute as the rights of cousins. They take, as next of kin, in the second degree, but grandparents are also in the second degree, and it has been contended that the four grandparents were entitled to share with brothers and sisters. *2 Kent 423.* They would be entitled to share upon the bare words of section 169, subdivision 3, but it was decided in England in several cases prior to our revolution that grandparents did not share with brothers and sisters. *Lord Winchelsea* v. *Norcliff, 2 Freem. 95 (1686)* ; *Pool* v. *Wishaw (1708)* and *Norbury* v. *Richards,* cited in *Evelyn* v. *Evelyn, 3 Atk. 762.* This construction was so thoroughly satisfactory that the cases seem never to have been taken to an appellate court, and we in this state have acquiesced so entirely that, although the case must have arisen, no one seems ever to have mooted the question in court. Yet the only foundation in reason for excluding the grandparents is the sense of natural justice which the framer of the statute had in mind when he required the distribution to be just. If no rule or limitation of the stat-

ute militates against such a construction, the just distribution required by section 168 would favor the respondents in this case.

The distribution must also be equal. The equality is, of course, not an absolute equality of shares, but an equality according to the respective rights of each and the rules and limitations of the statute. It seems quite improbable that the legislators could have intended that those standing in the same relationship to the intestate should receive unequal shares, yet that is the inevitable result of the construction for which the appellants contend. A cousin who is related only through a single parent, an uncle or aunt, would get a single share; a cousin related through both father and mother, both parents being descended from the great-great-grandparents, would receive a share not as the child of one of his parents only but as representatives of the great-great-grandparents on both sides; a cousin whose grandparents were also related through the great-great-grandparents (as they may well be, since cousins are allowed to intermarry); would receive an additional share by way of representation through each of his grandparents, for each must share in the distribution according to his or her respective right. The complication is increased by the fact that there are eight pairs of great-great-grandparents. It is impossible to conceive the result of the intermarriages of three generations. What they must be is well indicated by a note in *2 Bl. Com. 203.* It is only intermarriages which prevent the number of ancestors from actually doubling with each generation as we go back. An interesting illustration of the surprising effects of intermarriages is given in a genealogical table of the descendants of William the Silent in Frederic Harrison's biography, Appendix A. These difficulties, which present themselves when the next of kin are of the fourth degree, would be increased many times if the next of kin were first cousins once removed (the fifth degree) or second cousins (the sixth degree). These cases may not improbably arise, and if the appellants are right, we must in one case go back to great-great-great-grandparents, thirty-two in number, and in the other case to great-great-great-great-grandparents (sixty-four in number). Neither the justice nor the equality contemplated by section 168 would be prac-

ticable under such a construction of section 169. It is probable that it was because of the foresight of these difficulties that the rule limiting representation was adopted by Justinian and retained so many centuries.

In spite, however, of these difficulties, the just and equal distribution of the statute is subject to the rules and limitations of section 169, and if the language of that section requires the construction put upon it by the appellants, justice and equality must yield to the command of the legislature.

The statute of distributions, says Lord Hardwicke, in *Stanley* v. *Stanley, 1 Atk. 455,* is very incorrectly penned, and must therefore be construed according to the intent and meaning of the legislature. This incorrectness is conspicuous in the provisions now to be considered. Section 168 directs distribution to the next of kindred of equal degrees, or legally representing their stocks. The expression is evidently elliptical. The words "next of kindred" must mean living persons, but there is nothing to indicate what word is qualified by the participial expression "legally representing." It cannot, of course, be living next of kindred. Representatives in this sense, of living persons, would be as anomalous as an heir of a living person. The class designated to take by way of representation must be those persons who represent the same stock or same class of persons as the living next of kindred. The same difficulty is presented by the words of section 169, subdivision 3, "their legal representatives." The pronoun "their" naturally refers to the next of kindred, but since the next of kindred must be living persons, and since living persons can have no representatives in the sense of this act, the words must mean "the legal representatives of the next of kin who are dead." This may refer to the dead next of kin who were of the same degree as the living, or it may mean the representatives of those dead who, if living, would answer the same description as the actually living next of kin. In the former case it is the degree of kinship that is to be represented. In the latter it is the class of persons designated (in this case first cousins) that is to be represented. We agree with the learned judge of the orphans court that the latter is the true meaning. We see no difficulty in the language of section 169 to

prevent this construction, and the considerations already dwelt upon at length persuade us that we ought to adopt that construction which will best tend to promote the objects so clearly stated in section 168.

Adopting this construction, subdivision 3 of section 169 may be read, for the purpose of this case, as follows: "And in case there be no child, then to the cousins of or unto the intestate and their legal representatives."

It was argued, on behalf of the respondents, that the cousins represented the stock of the grandfather, and the descendants of great-uncles the stock of the great-grandfather, and that the cousins were therefore nearer of kin by virtue of representation. This view of the doctrine of representation seems to have been that of Blackstone, but it is not in harmony with the views expressed by Chief-Justice Beasley, for this court, in *Schenck* v. *Vail*, *24 N. J. Eq. (9 C. E. Gr.) 538*, and *Smith* v. *Gaines*, *36 N. J. Eq. (9 Stew.) 297.*

In our judgment, the stock to be represented is neither the stock of the grandfather nor of the great-grandfather, but the stock of first cousins, who are the class designated by the words "next of kindred."

This construction gives effect to the change which the legislature evidently meant to introduce into the statute, as Mr. Justice Reed held when sitting as vice-chancellor (*Fisk* v. *Fisk*, *60 N. J. Eq. (15 Dick.) 195*), and we think gives all the effect it was meant to have.

The legislature must have been aware of the settled construction of the statute which excluded grandparents from sharing with brothers, and could hardly have avoided the inference that a similar construction would exclude great-great-grandparents and their representatives from sharing with cousins. We fail to see anything in the language of the statute or the relationship which would justify one construction and not justify the other. It may, indeed, be urged that we adopted the construction from England, but the question, when first presented to the English courts, was purely a question of statutory construction, and the legislature was warranted in supposing that we would follow

the same construction when dealing with a similar question. We ought not to assume that the legislature would knowingly have created the difficulties attending a novel construction of language which had been construed in one way by the English courts for two hundred years.

Another clause of section 169 remains to be mentioned. The distribution is to be subject to "the rules and limitations hereinafter set down." Unless the construction above contended for is correct, it is difficult to understand what is meant by leaving the word "limitations" in the statute. Leaving out the proviso which was excised by the amendment, there remain rules for particular cases, but no "limitation," unless the words "their legal representatives" are limited as we limit them.

It is true that our construction makes the right of descendants of great-great-grandfathers or of great-uncles to share in the distribution depend on whether a great-great-grandfather or great-uncle survives the decedent. But this result is not more fortuitous than frequently happens in construing the statute of distributions. The right of nephews and nieces, for instance, to share *per stirpes* depends on whether an uncle or aunt survives. *Wagner* v. *Sharp, 33 N. J. Eq. (6 Stew.) 520.*

It was urged on behalf of the appellants that the decree fails to give effect to the word "every" in the phrase "every of the next of kindred," but this word appears in the subdivision which provides for distribution in case the intestate leaves a widow. If any argument is to be drawn from this word, it seems that its omission from subdivision 3 and its use in subdivision 2 make against the appellant.

We think the orphans court was right in holding that the only persons entitled to share in the estate were the living first cousins and the representatives of deceased first cousins. We think it was right, also, in holding that the descendants of deceased first cousins took *per stirpes.* Such seems to be the necessary result of the words of section 168, "or legally representing their stocks."

The appellants complain, also, that they were not allowed counsel fees in the orphans court or in the prerogative court.

We are unwilling to disturb the action of these courts on this subject. We have, however, been aided in the consideration of a novel, difficult and debatable question by the arguments and briefs of appellants' counsel, as well as of respondents' counsel, and counsel fees will be allowed to both sides in this court. The amount will be fixed upon application for that purpose.

The decree is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—12.

*For reversal*—REED—1.