## In re WOOD'S ESTATE.

Atlantic County Orphans' Court, New Jersey.
June 28, 1946.

Emory J. Kiess, of Atlantic City, for residuary legatees excepting the claimant.

Lloyd, Horn & Perskie, of Atlantic City, for claimant Dorothy Dodson Holm.

Murray Fredericks, of Atlantic City, for executor.

WARKE, J.

Erma R. Wood died a resident of Atlantic County on June 14, 1944, leaving a will containing a residuary clause. The estate was duly administered, and after final accounting a petition was filed for a Decree of Distribu-

tion. Among those who might have participated in the distribution of the residuary fund was one James M. Dodson, at one time a lieutenant in the Air Force of the United States Army.

Lt. Dodson was on overseas duty and sometime late in July of 1943 left his army base on a bombing mission from which neither he nor any of the members of the crew of the plane in which he traveled ever returned. The body of one of the occupants of the plane was found sometime later on the seacoast. The last communication from Lt. Dodson received by his wife was dated July 25, 1943, and received by her on August 3, 1943.

In this state of affairs the other residuary legatees claim that Lt. Dodson's share of Mrs. Wood's Estate should be awarded to them, on the ground that Lt. Dodson died in July of 1943 when he went on the bombing mission from which he never returned, thereby predeceasing the testatrix, Mrs. Wood, who died in June of 1944. On the other hand, his widow, who is also the administratrix of Lt. Dodson's Estate by appointment by the Courts of Texas, his domicile, claims that she is entitled to have the share in question, on the ground that Lt. Dodson cannot be judicially determined to have died at the time of his disappearance, but must be presumed to have lived for one year after the date of his disappearance, or until July 27, 1944. Both claimants invoke Chapter 46 of the Laws of 1945, N.J.S.A., 2:101–1.1 et seq., the first paragraph of which provides:

"A written finding of presumed death, made by the Secretary of War, the Secretary of the Navy, the United States Maritime War Emergency Board, or other officer or employee of the United States authorized to make such finding, pursuant to the Federal Missing Persons Act, as now or hereafter amended, or a duly certified copy of such finding, shall be received in any court, office or other place in this State as presumptive evidence of the death of the person therein found to be dead, and the date, circumstances and place of his disappearance."

Each of the claimants received a communication, presumably in response to their inquiries from the same

officer, and the respective writings entitled: "Statement of the Death of James M. Dodson, First Lieutenant, Air Corps", are in evidence. To the widow, the department wrote:

"The records of this office show that First Lieutenant James M. Dodson, Army Serial Number 0664877, Air Corps, who gave his date of birth as 30 July 1915, was reported missing in action 26 July 1943 in the European Area. Under the provisions of Public Law 490, 77th Congress, as amended, death is presumed to have occurred on 27 July 1944."

To the attorney for the residuary legatees, the statement of the department reads:

"The records of this office show that First Lieutenant James M. Dodson, Army Serial Number 0664877, Air Corps, who gave his date of birth as 30 July 1915, was reported missing in action 26 July 1943 in the European Area, when the aircraft, on which he was a crew member, encountered enemy flak and disappeared while on a bombing mission to Hanover, Germany. Under the provisions of Public Law 490, 77th Congress, as amended, death is presumed to have occurred on 27 July 1944. These findings are based on a report received through the International Red Cross, stating that Lieutenant Elden F. Jenkins, 0735383, Co-pilot of the airplane was killed in action on 26 July 1943, the date he was previously reported missing in action, and that his remains were washed ashore near 'Sophien Sommer Koog', which has been identified as Sophien Koge on Nordstrand Island, a tiny island situated 54 degrees 30 minutes north, 8 degrees 45 minutes east, in Helgoland Bay, west of Schleswig-Holstein."

At the very beginning of this consideration let it be pointed out that the N. J. Statute quoted in the beginning provides that the written finding of presumed death is received in this court as presumptive evidence first, of the death of the person therein found to be dead, and second the date, circumstances and place of his disappearance. Note that the act does not say that the certificate is presumptive evidence of the date of death, but only presumptive evidence of the date of his disappearance,

and the circumstances of such disappearance. The act, therefore, leaves to the court to determine the time of death.

It seems to me the difficulty with Mrs. Dodson's claim is that she is invoking the Federal Missing Persons Act, 50 U.S.C.A.Appendix, § 1001 et seq., as being dispositive of this New Jersey litigation, which it is not.

The Federal Law involved is part of the War Pay and Allowance Act, and provides, roughly, that when a person has disappeared, and has not been heard of for about 12 months, so far as the Missing Persons Act is concerned, the department head may order pay to be continued as if the subject were alive, or may make a finding of death, and the pay shall be continued or stopped according to such finding, provided that the officer may not determine death to have occurred within 12 months of the day of disappearance. The law was enacted altogether to enable the government to determine when the pay of a missing person should be stopped and his name taken from the payroll. Its provisions are not applicable to the situation before us.

The situation presents two questions to be determined by the law of New Jersey.

The first is: Is Lt. Dodson dead?

The second is: When did he die?

So far as the first question is concerned, all that is before the court is the statements of death from the army official above quoted, and the act makes these receivable as presumptive evidence of Lt. Dodson's death. A presumption is sometimes called a rule of evidence, or a substitute for evidence, but when there is nothing but a presumption before the court in any matter, the pending question is disposed of according to the direction of the presumption. There is therefore no hesitation in making a judicial finding that Lt. Dodson is dead.

The settlement of the second question viz. the time of Lt. Dodson's death is also found by applying the statute quoted above, which provides that the statement of death furnished by the army shall be presumptive evidence of

the date, circumstance and place of disappearance. The reading of the statements discloses the finding of the department so far as the time, place and circumstances of disappearance are concerned, is "26 July 1943 in the European area, when the aircraft on which he was a crew member, encountered enemy flak and disappeared while on a bombing mission * * *." The rest of the statement contains the finding of the department as to the time that death is presumed to have occurred under the Federal Missing Persons Act, and a narrative of the information upon which that finding is based.

This is all the evidence before me on the time, place and circumstances of the disappearance and the presumption is that the Lieutenant died while executing the airplane flight on July 26th or 27th, 1943.

There is ample precedent that circumstantial evidence of death, and the date of it is sufficient to base a finding of death, and the time thereof, if the circumstances taken altogether reasonably tend to support the inference sought to be derived therefrom. Gero v. John Hancock Life Insurance Co., 111 Vt. 462, 18 A.2d 154; Herold v. Washington National Insurance Co., 128 Pa.Super. 563, 194 A. 687. In the latter case the subject was last seen alive swimming in the ocean at a summer resort. He was never seen again, and the court decided that notwithstanding the fact that seven years had not elapsed since the disappearance of the subject, the above demonstration was sufficient to entitle a jury to determine that the person died by drowning on the day that he was last seen, as above described. So it was held that evidence that a steamboat officer was seen on the ship one evening while the ship was at sea and was never seen or heard of thereafter, was sufficient to entitle the jury to find that the man died on the day of his disappearance, and that it was not necessary to wait for seven years after the disappearance before making such judicial finding.

In view of the foregoing, I am constrained to hold that Lt. Dodson is dead, and that he died on July 26 or 27, 1943. The result hereof is that his distributive share in

Mrs. Wood's Estate must be awarded to the surviving legatees.

Let counsel prepare a Decree accordingly, and present it for signature.