[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 216 
This is one of the unfinished cases of the late Vice-Chancellor Woodruff which was assigned to me after the effective date of the Judicial Article of the 1947 Constitution. All of the issues in this controversy except those dependent upon the death of Louis H. Beneke, one of the beneficiaries named in the last will and testament of Cecilia R. Beneke, deceased, and the date thereof, have been disposed of by compromise and agreement among counsel, or otherwise.
By her will, testatrix made three provisions for her cousin Louis H. Beneke. These provisions comprised: (1) the appointment of $2,000 to him out of her father's residuary estate by sub-paragraph (i) of the third clause of her will; (2) the remainder interest in the appointed sum of $5,000 by sub-paragraph (y) of the same clause, subject to the life interest of her cousin, Carrie B. Lukens; (3) the remainder interest in her residuary estate by the fourth clause of her will, subject to a prior life estate in her cousin, Sarah Showaker.
Louis H. Beneke was a captain in the United States Army Air Forces during the late World War and was reported missing on September 29, 1944 while on a ferrying flight of a B-25 Mitchell bomber in the southwest Pacific. Pursuant to the provisions of the War Pay and Allowances Act of 1942, section 1001, et seq.,
and particularly section 1005 of that act *Page 218 
(50 U.S.C.A., p. 463) the Adjutant General of the War Department fixed the presumed date of Captain Beneke's death as February 25, 1946. Our inquiry, therefore, is three-fold: (1) Is the finding of the Adjutant General with respect to the death of Captain Beneke, and the date thereof, binding upon this court? (2) If it is not, is Captain Beneke dead? (3) If his death is presumed from the circumstances disclosed by the evidence, when did he die? Upon the answer to these questions the rights of the several claimants to the legacies above mentioned depend.
The testatrix Cecilia R. Beneke died on November 13, 1945. If Captain Beneke died prior to that time, the legacies to him lapsed and testatrix died intestate as to that portion of her estate comprised in such legacies. 1 Roper on Legacies, chap.VIII, p. 462, et seq.; R.S. 3:5-6 and 3:2-18. If he survived the testatrix then his interest in her estate goes to his mother, as he was unmarried and without issue. R.S. 3:5-4.
It should first be noted that the purpose of those provisions of the War Pay and Allowances Act of 1942, authorizing a finding of death of a missing person and the date upon which such death shall be presumed to have occurred, is "for the purposes of termination of crediting pay and allowances, settlements of accounts, and payments of death gratuities," and such date must not be less than twelve months from the date of the commencement of the absence of such missing person (sec. 1005, supra); and the determination of the head of the department concerned as to death and the date thereof are only for the purposes of that act(sec. 1009, supra). It merely enables the government to determine when the pay or allotments of a missing person should be stopped and his name taken from the pay-roll.
Our statute, R.S. 2:101-1.1, provides as follows:
"Finding of presumed death under Federal statute aspresumptive evidence
"A written finding of presumed death, made by the Secretary of War, the Secretary of the Navy, the United States Maritime War Emergency Board, or other officer or employee of the United States authorized to make such finding, pursuant to the Federal Missing *Page 219 
Persons Act, as now or hereafter amended, or a duly certified copy of such finding, shall be received in any court, office or other place in this State as presumptive evidence of the death of the person therein found to be dead, and the date, circumstances and place of his disappearance."
While that act provides that the certificate of death authorized by the federal statute above referred to shall be received in our courts as presumptive evidence of the death of the person named therein, it does not provide that it shall be received as evidence, presumptive or otherwise, of the date of such death, but only of "the date, circumstances and place of his disappearance." This construction of that act is dispositive of the first and second portions of our three-fold inquiry. The finding of the Adjutant General is binding only as to the date of the disappearance of Captain Beneke, and as to the fact of his death; but not as to the date of his death. On the basis of that finding, we are, therefore, justified in assuming that Captain Beneke is dead. The only remaining question is when did he die?
The arguments of counsel touching this question are based mainly upon the familiar presumptions of life and death, it being argued on the one hand that there is no positive proof of Captain Beneke's death, and that, therefore, it must be presumed that he is still alive. Another contention is that there can be no presumption of his death until he has been absent and unheard of or from for the full period of seven years prescribed by the statute, R.S. 3:42-1. Still another contention is that Captain Beneke died on the day of his disappearance, September 29, 1944, or within a day or two thereafter, and the so-called "special peril" doctrine (16 Am. Jur. 32) is invoked in support thereof. And yet another argument is that the so-called "special peril" doctrine is not recognized by the courts of this state and that even if it were, it could not be invoked until after the lapse of the seven-year statutory period. Also, it is contended that, as Captain Beneke was a legal resident of and domiciled in Pennsylvania, when he disappeared, the law of that state touching the date of his death controls, and that under that law we must presume that his death occurred on the date fixed and certified to by the Adjutant General of the *Page 220 
War Department pursuant to the War Pay and Allowances Act of 1942, supra, which was February 25, 1946, approximately 18 months after the date of his disappearance. In support of this last contention, In re Millar's Estate, 356 Pa. 56,51 Atl. (2d) 745, is cited. There are doubtless decisions of English or American courts supporting all of these arguments and contentions. Our problem here is to determine the rule of law in this state applicable to the circumstances here shown by the evidence in this cause.
Professor Greenleaf states the rule of presumptions of life and death as follows:
"Other presumptions are founded on the experienced continuance or permanency, of longer and shorter duration, in human affairs. When, therefore, the existence of a person, a personal relation, or a state of things, is once established by proof, the law presumes that the person, relation, or state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised, from the nature of the subject in question. Thus, where the issue is upon the life or death of a person, once shown to have been living, the burden of proof lies upon the party who asserts the death. But after the lapse of seven years, without intelligence concerning the person, the presumption of life ceases, and the burden of proof is devolved on the other party. This period was inserted, upon great deliberation, in the statute of bigamy, and the statute concerning leases for lives, and has since been adopted, from analogy in other cases. But where the presumption of life conflicts with that of innocence, the latter is generally allowed to prevail. Upon an issue of the life or death of a party, as we have seen in the like case of the presumed payment of a debt,the jury may find the fact of death from the lapse of a shorterperiod than seven years if other circumstances concur; as, if the party sailed on a voyage which should long since have been accomplished, and the vessel has not been heard from. But the presumption of the common law, independent of the finding of the jury, does not attach to the mere lapse of time, short of seven years, * * *." Greenleaf on Evidence, vol. 1 (Redfield'sEd.), Part I, chap. IV, sec. 41, pp. 46-48. (Italics mine).
And, see Note 2, at bottom of page 47, which reads in part as follows:
"The presumption in such cases is, that the person is dead; but not that he died at the end of the seven years, nor at any other particular time. Doe v. Nepean, 5 B. Ad. 86; 2 M. W.
894. The time of the death is to be inferred by the jury, from the circumstances. Rust v. Baker, 8 Sim. 443: Smith v.Knowlton, 11 N. Hamp. 191; Doe v. Flanagan, 1 Kelly, 543;Burr v. Sim, 4 Whart. 150; *Page 221 Bradley v. Bradley, Id. 173 (Whiteside's Appeal, 23 Penn.St. R. 114; Spencer v. Roper, 13 Ired. 333; Primm v.Stewart, 7 Texas, 178. See also Creed, in re, 19 Eng. Law Eq. 119; Merritt v. Thompson, 1 Hilton, 550)."
See, also, Taylor's Law of Evidence, vol. 1, (American ed.,Philadelphia 1887, from the 8th English ed.,), sec. 200 (157); Phillips on Evidence, vol. 1, (5th ed.),([*]640), pp. 532-533; 5 Wigmore on Evidence (2nd ed.),p. 538, sec. 2531 (b), and Note 4; 16 Am. Jur. 25,secs. 27, 34, 35 and 37; 25 C.J.S., p. 1053, et seq.,secs. 5, 6, 8, 9, etc.
In Clarke v. Canfield, 15 N.J. Eq. 119, it was held that in the absence of the statute which raises a presumption of death of a person absenting himself for seven years without being heard from, the presumption would be that the absent person is still alive and that this presumption of the continuance of life only ceases when it is overcome by the countervailing presumption of death, which is not until the end of seven years; and that the statute was designed to furnish a legal presumption of the time of death as well as the fact of death. I do not understand, however, that by this decision any hard and fast rule as to the time of death of an absent person was intended to be laid down where competent evidence of circumstances justifying an inference of death within the seven year period was present. This thought is emphasized by the language of Chancellor Green, at page 122 of the report, where he said:
"So there may be circumstances which will create a presumptionin fact of the death of an absent party within seven years. But this in no wise affects the legal presumption created by the statute, and in the absence of such circumstances a presumption of life continues until arrested by the statute." (Italics mine).
In Davie v. Briggs, 97 U.S. 628, 634, in commenting upon the presumption of death after an absence of seven years, Mr. Justice Harlan, speaking for the U.S. Supreme Court, said:
"If it appears in evidence that the absent person, within the seven years, encountered some specific peril, or within that period came within the range of some impending or immediate danger, which might reasonably be expected to destroy life, the court or jury may infer that life ceased before the expiration of the seven years. Mr. Taylor, in the 1st volume of his Treatise on the Law of Evidence, *Page 222 
sec. 157, says, that `Although a person who has not been heard of for seven years is presumed to be dead, the law raises no presumption as to the time of his death; and, therefore, if anyone has to establish the precise period during those seven years at which such person died, he must do so by evidence, and can neither rely, on the one hand, on the presumption of death, nor, on the other, upon the presumption of the continuance of life.' These views are in harmony with the settled law of the English courts, as will be seen from an examination of the authorities. In Re Phene's Tr., L.R. 5 Ch. App., 139;Hopewell v. De Pinna, 2 Camp., 113; Queen v. Lumley, L.R. 1Cr. Cas. Res., 196; In Re Lewes' Tr., L.R., 11 Eq. Cas.,
236; 40 L.J. Ch., 602; Dunn v. Snowden, 32 L.J. Ch., 104;Lambe v. Orton, 29 L.J. Ch., 286; In Re Benham's Tr., 37L.J. Ch., 265, including the leading case in the Court of Exchequer of Nepean v. Knight, 2 Mees. W. 894, in error from the Court of King's Bench. In that case Lord Denman, C.J., said: `We adopt the doctrine of the Court of King's Bench, that the presumption of law relates only to the fact of death, and that the time of death, whenever it is material, must be a subject of distinct proof.' To the same effect is Mr. Greenleaf and the preponderance of authority in this country. 1 Greenl.Ev., sec. 41."
Death must be established by "a preponderance of probabilities of a quality befitting the nature of the subject matter and its hazards." In re Wyllie's Estate, 236 N.Y.S. 370, 374,134 N.Y. Misc. 715. "An inference of death, founded on a reasonable probability, must prevail against mere possibilities." 25C.J.S., sec. 9, p. 1066. "Any circumstances from which an inference of life or death may be drawn, * * * (is) proper for consideration. An inference of immediate death may be drawn if a person last seen in a state of imminent peril has never been seen or heard from since." 25 C.J.S., pp. 1067-1068, sec. 10.Brownlee v. Mutual Benefit, c. (C.C.A. Ore.)29 Fed. (2d) 71. "Neither the presumption of death arising from seven years' unexplained absence nor the rule that death is deemed to have occurred at the expiration of the period precludes an inference that death may have occurred before the expiration of such period where there are circumstances which would justify a conviction that death occurred at an earlier date, as for instance that the absent person, during the period after his disappearance, encountered some specific peril, or was subject to some immediate danger calculated to destroy life, * * * or by any other circumstances which when submitted to the test of reason and experience would warrant a conclusion of *Page 223 
death at an earlier time." 25 C.J.S., pp. 1068-1069, sec. 10. See, also, Ryan v. Prudential Ins. Co. (Pa.),4 Atl. (2d) 812; and Davis v. Metropolitan Life Ins. Co., 285 Ill. App. 398,2 N.E. (2d) 141.
"It is for the court to decide whether the evidence is sufficient to warrant an inference of death at any particular time; * * *. Where the evidence is sufficient to make an issue, it is for the jury to determine the time of death." 25 C.J.S.,sec. 10, p. 1069.
In Goodier v. Mutual Life Ins. Co. (Minn.) 196 N.W. 662,34 A.L.R. 1383, the court, at p. 1389, said:
"The prevailing view is that there is, at least, no presumption, from absence without being heard from, alone, of death at any time prior to the expiration of the seven-year period. See 8 R.C.L. 711. It is obvious, therefore, that if the substantive rights of a party depend not alone upon the fact of death, but upon death at some time before the expiration of seven years, it is necessary that additional circumstances pointing to death before the expiration of that period shall appear, whether the question arises before or after the expiration of that period."
See, also, Burr v. Sim, 4 Wharton 150; In re MutualBenefit Co., 34 Atl. 283 (Pa.); Whiteside's Appeal, 23Pa. State R., 114; Fanning v. Equitable Life Assurance Soc. of theU.S., 264 Pa. 333, 107 Atl. 715; Herold v. WashingtonNational Ins. Co., 128 Pa. Superior Court, 166, 194 Atl.
687; Continental Life Ins. Co. v. Searing, 153 C.C.A. 451,240 Fed. 653.
It is true that in many of these cases the question as to the date of death does not arise until after the expiration of the seven-year period. In Connor v. N.Y. Life Ins. Co.,166 N.Y.S. 985, 179 App. Div. 596, it was held that "the presumption that the death occurred at the end of the seven years obtains only by the necessity of the case, in the absence of evidence indicating death at another time," but that the time of death could not be inferred from circumstances until after the lapse of the seven-year period. But the rule has been applied in cases arising in less than one year after disappearance and for varying periods less than the statutory seven years. SupremeCouncil v. Boyle, 10 Ind. App. 301, 37 N.E. 1105; Carpenterv. Supreme Council, 79 Mo.App. 597; Newman v. Jenkins, 10 *Page 224 Pickering (Mass.) 515; Herold v. Washington National Ins. Co.,supra; Veselsky v. Bankers' Life Ins. Co., 248 Ill.App. 176.
In Herold v. Washington National Ins. Co., supra, suit was brought on an accident policy for the death of the insured within a few months after his disappearance on July 7, 1935. Judgment was rendered against the insurance company at the December term, 1935. On appeal it was held that the suit had not been prematurely brought and that the presumption of life during the seven years following disappearance of a person can be overcome by proof of circumstances of a specific peril to which the person disappearing was subjected, and that the death need not beproved beyond a reasonable doubt; that only a fair preponderance of clear and convincing evidence, direct and circumstantial, is sufficient. (Italics mine). The court cited 37 Corpus Juris,sec. 442, p. 639, in support of this proposition.
In a per curiam opinion the court said:
"Circumstances, tending to show that the insured was subjected to specific peril or serious danger on the day he was last seen or heard of were given in evidence which, if believed by the jury, were sufficient, in our opinion, to support a finding that he was accidentally drowned on July 7, 1935, although his body was not recovered. In that event, it was not necessary to wait seven years before bringing suit, and the case was one of fact for the jury."
In Newman v. Jenkins, supra, suit was brought before the expiration of the seven-pear period. Letters of administration on the missing person's estate had been granted and the court held that that fact was conclusive on the question of death, although the facts upon which the probate court based its finding of death did not appear. But it has also been held that letters of administration are not admissible in evidence to prove the time of death, Bering v. U.S. Trust Co. of N.Y., 193 N.Y.S. 753, 201 App. Div. 35; English v. Murray, 13 Tex. 366.
Indeed, in some jurisdictions it is not necessary to show that the absent person encountered some specific peril in order to find that his death occurred prior to the expiration of the seven-year period. In these jurisdictions it is held that the question of death within the seven-year period is one of fact, *Page 225 
to be proved as any other fact is proved, and that the jury, or the court sitting without a jury, may justifiably infer death from circumstantial evidence even though it does not show that the decedent incurred any particular peril. 25 C.J.S., p. 1067,sec. 10; Cox v. Ellsworth, 18 Neb. 664, 26 N.W. 460;Boyd v. New England Mut. Life Ins. Co., 34 La.Ann. 848;Northwestern Mutual Life Ins. Co. v. Stevens, 71 Fed. 258, 261, 262; Lancaster, Administrator v. Washington Life Ins. Co.of N.Y., 62 Mo. 121; Coe v. National Council K. L. of S.,96 Neb. 130, 147 N.W. 112, L.R.A. 1915B 744; Harvey v.Fidelity and Casualty Co., 200 Fed. 925; Rogers v. ManhattanLife Ins. Co., 138 Cal. 285, 71 Pac. 348; Western Grain Co.v. Pillsbury, 173 Cal. 135, 159 Pac. 423; Smith v.Knowlton, 11 N.H. 191; In re Christin's Estate,128 Cal. App. 625, 17 Pac. (2d) 1068; Metropolitan Life Ins. Co. v.James, 144 So. 33, 34, 225 Ata. 561; Lesser v. N.Y. LifeIns. Co., 53 Cal.App. 236, 200 Pac. 22; Tisdale v. Conn.Mut. Life Ins. Co., 26 Iowa 170, 176, 96 Am. Dec. 136, 138;Mutual Life Ins. Co. v. Louisville Tr. Co., 269 S.W. 1014,207 Ky. 654; Fidelity Mutual Life Assoc. v. Mettler,185 U.S. 308 (46 L.ed. 922). In the Mettler case, at page 319, Mr. Justice Fuller, referring to the decision of the U.S. Supreme Court in Davie v. Briggs, supra, said:
"But it was not thereby ruled that the inference of death might not arise from disappearance under circumstances inconsistent with a continuation of life, even though exposure to some particular peril was not shown, * * *."
In Meyer v. Madreperla, 68 N.J. Law 258, it was held that the presumption of the continuance of life would be overcome by the presumption of death after an absence of seven years, unheard of, and that the presumption of death raised by the statute is not a mere presumption of death but is also a presumption fixing the time of death at the expiration of the seven successive years of absence unheard of. And in Clarke v. Canfield, supra, it was held that this presumption of death can not act retrospectively.
In Bradford v. Culbreth, 10 Atl. (2d) 534 (Del.) the court, at page 543, said, "There is an irreconcilable conflict of authority *Page 226 
as to whether the presumption of death raises also a presumption of time of death." An excellent discussion of this whole subject will be found in an article entitled "Presumption of The Time of The Death of One Presumed To Be Dead after An Absence of Seven Years," in 3 Va. Law Rev. 451. See, also, Annotations L.R.A.
1915 B, 735, 745, 746, 748; 34 A.L.R. 1390, 1394;61 A.L.R. 1327, 1330; 26 L.R.A. (N.S.) 294; 75 A.L.R. 631.
In Sillart v. Standard Screen Co., 119 N.J. Law 143, it was held that the presumption of a person's innocence of crime would overcome the presumption of continuance of life in an action involving a charge of bigamy. To the same effect are Vreeland v.Vreeland, 78 N.J. Eq. 256; Tyll v. Keller, 94 N.J. Eq. 426; Keller v. Linsenmyer, 101 N.J. Eq. 664. And, see,Saracino v. Kosower Construction Co., 102 N.J. Eq. 230, where the absence of a person unheard of for a period of 40 years was considered insufficient to eliminate the doubt as to the marketability of title to land so as to justify a decree for specific performance, notwithstanding the statute. That decision was undoubtedly due to the provision of the statute that the estate of such absent person shall be restored to him if he is later proved to be living, and the rule that specific performance lies more or less in the discretion of the Chancellor. But, it seems to me that in many of the cases involving the death of an absent person and the date thereof, the realities of life are lost sight of and the courts have failed to distinguish between an inference of fact and a presumption of law. Conditions attending travel and communication are far different today than they were when these presumptions of life and death were first conceived, which apparently was early in the 17th Century (1Jac. 1, c. 11, s. 2-1603; 19 Car. 2, c. 6-1667); or, indeed, when our statute (R.S. 3:42-1) was first enacted (1797 — Paterson's Laws, 241). Modern means of transportation and communication, thanks to the airplane and the radio, have eliminated both time and distance to such an extent that Jules Verne's Around the World in Eighty Days has been reduced to as many hours, or less, and the news of the world encircles the globe almost at the instant of its occurrence. These modern *Page 227 
inventions and discoveries pose the question of revision downward of the requisite period of absence unheard of as a basis for presumption of death. In some jurisdictions such revision has already been made. People v. Feilen, 58 Cal. 224.
After all, presumptions, either of law or of fact, are merely substitutes for evidence, and the presumption of death, both as to the fact and the time thereof, at the end of the seven-year statutory period, is merely a rule of convenience based upon experience or public policy and established to facilitate the trial of causes. And where conflicting presumptions arise the whole case is then thrown open to be decided as a fact on all the evidence. Such presumptions are not conclusive, but may be rebutted by competent evidence or counter-presumptions. Turnerv. Williams (Mass.) 89 N.E. 110; Tyll v. Keller, Meyer v.Madreperla, Keller v. Linsenmyer, supra; Burkhardt v. Burkhardt,63 N.J. Eq. 479.
It is not necessary for the parties to this controversy to rely on either the presumption of a continuance of life or a presumption of death; but death and the time thereof may be inferred from the circumstances of Captain Beneke's disappearance, even though such death is not directly proved.
As already stated, counsel for Sarah Showaker contends that Captain Beneke must be presumed to be still alive because the seven-year period fixed by the statute has not elapsed, and he contends that the so-called "special peril" doctrine has not been recognized in this state. In this contention I feel that he is in error. I have already quoted the language of Chancellor Green inClarke v. Canfield, supra, to the effect that there may be circumstances creating a presumption in fact of the death of an absent party within the seven-year period. That, in my judgment, is a recognition of the "special peril" doctrine, and that was as early as 1862. That doctrine was not then disapproved, nor, so far as my research discloses, has it even been disapproved by any New Jersey court. On the contrary, in Sternkopf's Case(1906), 72 N.J. Eq. 356, at p. 359, Chancellor Magie, sitting as Ordinary, said:
"While it is true that upon proof of the existence of a person at a particular time it must be presumed that he continued to exist thereafter *Page 228 
until his death is proved, it has never been conceived that the proof of death must necessarily be direct. Obviously, upon proofof circumstances raising a counter-presumption, his death may befound. Thus, if he embarked on a vessel which was never afterward heard from, or which was proved to have been shipwrecked, at least under circumstances indicating the loss of all on board, there would be a question, after a reasonable time had elapsed, during which he had not been heard from, whether the presumption of the continuance of his life had not been overcome by the counter-presumption of his death in the shipwreck." (Italics mine).
While in that case it was not necessary to apply the "special peril" doctrine, because of a lapse of more than seven years, it is nevertheless a recognition, and, it seems to me, an approval of that doctrine.
The facts touching the disappearance of Captain Beneke, so far as they now appear, are that he was a captain in the United States Air Force, during World War II, and was last seen at Finschhafen, New Guinea, on or about September 29, 1944, on a ferrying flight, with other members of his crew, to Neomfoor Island, Netherlands Indies. During the course of this flight he was obliged to fly over the Pacific Ocean for a long distance, probably five or six hundred miles, and over enemy territory for an additional distance of about four hundred miles. That it was a perilous flight is obvious and is not questioned. The War Department reported him missing on September 29, 1944, and neither he nor any member of his crew has ever been heard from since. More than four years have now elapsed and no tidings of Captain Beneke, or of any member of his crew, have yet been received by those who would be most likely to receive them. It was customary for fliers on such flights to stop at Hollandia for refueling purposes, but evidently Captain Beneke never reached that place; and enemy territory intervened. From these facts it seems to me that the inference that Captain Beneke died while on this flight, and probably on the day that he was reported missing, or shortly thereafter, is inescapable; and certainly his death must have occurred, in any event, before November 13, 1945, a year and six weeks later, when testatrix, Cecilia R. Beneke, died.
It is true that there is no decision of our higher courts exactly in point on the question here involved, but in an unreported *Page 229 
and well considered opinion in In re Estate of Erma R. Wood,Deceasea, 62 A.2d 883, in the Atlantic County Orphan's Court, Judge Warke, on June 28, 1946, applied the "special peril" doctrine to the circumstances of that case and held that a Lieutenant in the Air Force of the United States Army, who left his base on a bombing mission over enemy territory in Europe in the latter part of July, 1943, and was never thereafter heard from, died on the date of his disappearance, notwithstanding the fact that the War Department, pursuant to the War Pay and Allowances Act, fixed the date of his death as having occurred on July 27, 1944. The lieutenant, whose death was there in question, was a resident of the State of Texas, but his right, and the right of those claiming through him, to participate in the distribution of that New Jersey estate were held to be determinable by the law of this state.
As already noted, counsel for the defendant, Sarah Showaker, cites In re Millar's Estate, supra, in support of his contention that the presumed date of death, fixed by the War Department, is controlling. I have examined the report of that case but it is not, in my judgment, applicable here, as it does not appear that there was any controversy concerning the actual date of death. Nor would it, in any event, be controlling, because the instant litigation concerns a New Jersey estate the disposition of which must be governed by New Jersey laws.Philadelphia Home for Incurables v. Philadelphia Saving FundSociety, 126 N.J. Eq. 104 (affirmed 129 N.J. Eq. 243). The question touching the date of death of Captain Beneke is one of fact, to be determined in accordance with the laws of this state, and I find as a fact that he died on or about September 29, 1944.
At the last hearing in this cause before me in open court, I announced my decision that the portion of testatrix' estate which she bequeathed to Captain Beneke, and as to which she died intestate, should be distributed among her surviving first cousins per capita and not per stirpes. R.S. 3:5-6; Wagnerv. Sharp, 33 N.J. Eq. 520; Fisk v. Fisk, 60 N.J. Eq. 195;Smith v. McDonald, 69 N.J. Eq. 765 (affirmed 71 N.J. Eq. 261 *Page 230 ); In re Miller's Estate, 103 N.J. Eq. 86 (affirmed104 N.J. Eq. 491); In re O'Mara's Estate, 106 N.J. Eq. 311.
Judgment will be entered accordingly.