The Middlesex County Orphans' Court entered an order denying the application for the probate of a last will and testament of Samuel Zwiebel; and Bella Zwiebel, the executrix named therein, appeals.
Samuel Zwiebel, a resident of New Brunswick, 54 years of age, was married to Bella Zwiebel, the appellant, and had three children, two of whom are minors. He was a partner with Samuel Arshan, his son-in-law, in the Middlesex Wholesale Grocery Company. On November 27, 1945, he left his *Page 37 
office to make the usual calls on customers. At approximately 4:00 P.M. he phoned his office and spoke to a clerk about certain merchandise. The clerk asked him how he felt and he said he felt very bad; and in answer to a question as to whether he had taken his pills, he said "What is the use of living if I have to take pills all the time?" At about 4:30 P.M. he stopped in the store of a customer in Perth Amboy and took an order. He left there at about 5:00 P.M. and has not been seen or heard of since. At about 9:30 the next morning a motor vehicle inspector found an automobile parked on the Edison Bridge which spans the Raritan River at Perth Amboy. At the place where the car was found, the bridge is about 125 feet above the river. The parking lights were on, the keys in the ignition lock, and in the trunk were found a hat, overcoat, suit coat, and a brief case containing $137 in cash, checks and other papers. The car and contents were identified as the property of the absentee, and the clothes as those worn by him on the day of his disappearance. Two notes in his handwriting were found among the papers in the car. One note read: "11/26/45, 3:30 P.M. To my dear ones: Old Polly, Sr. (Politziner) just deceived me, and the old man with his mean tricky words when he needed me got me to sign everything his way. But I will try to call on old man Polly, Sr. (Politziner) and Jesse shortly, if only possible. With many kisses to all, your husband, father, father-in-law, and grandpop. And let this bring you good luck." The other note read: "11/27, 4:30 P.M. Dear Sam: As to these orders use your judgment. And I beg forgiveness from all my loved ones. Oh, how I hate to do this to you. My dear Sam, have the smaller note published and let them see what hypocrits there are." As to the first note, his son-in-law, who had an interest with the absentee and Politziner in a predecessor business to the Middlesex Wholesale Grocery Company, testified that there was no basis for the charge against this former associate and that the note was "all twisted and garbled and it is really not coherent;" and, as to the second note, he testified that the last sentence also referred to Politziner and that he couldn't understand it. *Page 38 
The absentee had been examined by his doctor on April 7, 1942, and found in excellent physical condition; on May 1, 1944, when the finding was arteriosclerosis with enlargement of his heart and he was advised to avoid excessive emotional strain and physical activities; on October 1, 1945, when the diagnosis was coronary artery disease and he was advised to reduce his physical activities; and on November 12, 1945, when no change in his condition was found. He had been jolly and cheerful, but became depressed when he learned of his heart condition. He had no personal financial difficulties, no unusual withdrawal had been made from his bank account, and the financial condition of the business was satisfactory.
The Coast Guard dredged for the body and, in addition, a fishing captain spent several days dredging, without success. Leo Zwiebel, the absentee's brother and only other relative, came east from his home in San Diego, California, to aid in the investigation.
Death may be proved in our State by (1) proof in the usual method, in which absence is no factor; (2) proof under R.S.
3:42-1 after seven years' absence; and (3) proof under P.L.
1945, c. 46, after a written finding of death under the Federal Missing Persons Act (50 U.S.C.A. Appendix, §§ 1001 et seq.), which finding may be made after one year's absence.
Appellant concedes that the evidence is insufficient to prove death under any of these methods. However, she points out that some states have adopted the "special peril" doctrine, under which there can be proof death of an absentee without absence for seven years, if unexplained absence plus exposure to some specific danger or peril is shown, citing cases; and that other states have adopted a still broader rule, under which there can be proof of death of an absentee without absence for seven years, by evidence of facts and circumstances which, together with the unexplained absence, establish the probability of death, even if such evidence does not show the absentee to have been in peril, citing cases, of which Tisdale v. Connecticut Mut. Life Ins.Co., 26 Iowa 170, *Page 39 96 Am. Dec. 136, is typical. Granting that there was no evidence in this case of exposure to any special peril, appellant argues that we should adopt the rule set forth in the Tisdale case, and that under it the evidence is sufficient to prove death in this case.
It will serve no useful purpose to review the many cases supporting the different doctrines and the law review articles commenting thereon. The cases are gathered in 25 C.J.S., Death,
§ 9; 16 Am. Jur., Death, §§ 26, 27, 28; and many are annotated in L.R.A. 1915B, 744; 34 A.L.R. 1389; 61 A.L.R. 1327;75 A.L.R. 630 and 115 A.L.R. 404. Suffice it to say that no case has been found in our State in which the court dealt directly with the question raised here.
We are aware of the dissatisfaction with results under the seven-year absence statutes; under the "special peril" doctrine; and under the Tisdale doctrine; and of the proposals made for statutory change. See Wigmore on Evidence (3d ed.), § 2531; 9Uniform Laws Annotated, pp. 1 to 10. Professor Wigmore recommends the adoption of the Uniform Act, but points out that it only partially meets the problem, and suggests two additional statutes for adoption. Since the approval of the Uniform Act in 1939, it has been adopted — with some change — in Maryland, Tennessee and Wisconsin. Difficulties encountered in the application of the provisions of the Uniform Act are discussed in the ColumbiaLaw Review, February, 1938, 38:322-37.
There are two serious objections to the adoption of the Tisdale
doctrine in this State without supplementing legislation. First, the difficulty in finding the time of death which arises from the nature of the evidence accepted to prove the fact of death. The finding of a specific date of death is always necessary in cases involving a reversion or remainder or inheritance of an estate succeeding another estate, and almost always necessary in cases involving the distribution of the absentee's estate. In cases involving insurance policies on the absentee's life, or involving the lapse of a legacy or devise, the finding is sufficient if it finds death to have occurred during the period between the time of disappearance *Page 40 
and the particular date involved. In most cases, the finding of a specific date of death would have to rest on pure speculation and the finding that death occurred during a specific period of time would always be difficult, with the difficulty increasing as the period contracts. This difficulty in fixing the time of death does not arise in the application of our seven-year absence statute. SeeMeyer v. Madreperla, 68 N.J.L. 258 (E. A. 1902); Clarke'sEx'rs v. Canfield, 15 N.J. Eq. 119 (Ch. 1862). Second, there would be no statutory protection for the administrator or executor in case the absentee returned, as there is under the seven-year statute, R.S. 3:42-3, and no protection for the purchaser of the absentee's real property, as there is under R.S. 3:42-4, 3:42-5, 3:42-5.3 and 3:42-8. We conclude that the doctrine in the Tisdale case should not be followed.
Since the absence in this case was for less than seven years, it cannot be relied on as a factor in proving death. Without reliance upon absence as part of the proof, the evidence in this case fails to prove death. The Legislature, having in mind cases such as this, has made provision for the management and conservation of the absentee's estate and for the needs of his dependents during the seven-year period. R.S. 3:41-1 etseq.
The order under appeal is affirmed.